Houston East & West Texas Railway Company v.
Coleman B. De Walt.

No. 1145. Decided December 1, 1902.

**1.—Master and Servant—Obeying Orders.**

A servant is not bound by law, under all circumstances, to obey the orders of his superior. The latter has no right to give nor is the former bound to obey orders involving risk so great and so obvious that no prudent man would take it. (P. 133.)

**2.—Same—Master's Liability.**

The master is not necessarily responsible to the servant for the consequence of his obedience to orders to do work which is extra hazardous. (P. 133.)

**3.—Same—Fact Case.**

An employe at a station, being directed by the agent to seal and cleat a car to be taken out by a train then switching at the station, got up on the end of the car, then switched out onto the main track, to nail a cleat on the window, and was knocked off and run over by another car propelled against it by the switching crew. Held, that the master's liability by reason of the order was not absolute, but dependent on a finding of the jury on the issue of contributory negligence. (P. 133.)

**4.—Same—Charge—Pleading.**

An instruction holding the master liable for injury to the servant if received in obeying an order was not applicable where the pleadings and evidence presented an issue as to whether the order in question contemplated the performance of such work at the time and place which made it extra hazardous and occasioned the injury. (Pp. 132, 133.)

**5.—Same—Contributory Negligence.**

An instruction that the master was liable, absolutely, for the results to the servant of obedience to orders is erroneous where it ignores an issue, involved by the pleading and evidence, whether the obedience involved such risk as a man of ordinary prudence would not have taken, and the error is an affirmative one. (Pp. 132, 134.)

**6.—Charge—Conflict.**

Instructions so conflicting as to confuse the jury are ground for reversal. (P. 134.)

**7.—Admission—Pleadings.**

Pleadings, though superseded by amendment, may be given in evidence, against the pleader, of any facts distinctly alleged therein; though, since a defendant may, by statute, plead inconsistent defenses, an answer which in one part denies and in another part admits a fact can not be treated as evidence of an admission of such fact by the defendant. (Coats v. Elliott, 23 Texas, 606, explained and harmonized· with this ruling and with Bank v. Watson, 95 Texas, 351, and Barrett v. Featherstone, 89 Texas, 567.) (Pp. 134, 135.)

Questions certified by the Court of Civil Appeals for the First District, in an appeal from Polk County.

*Baker, Botts, Baker & Lovett* and *J. S. McEachin,* for appellant.—The charge was improper under the pleadings and evidence. Telephone Co. v. Woughter, 19 S. W. Rep., 575; McDermott v. Railway, 28 Am. and Eng. Ry. Cases, 532; Kean v. Detroit Copper Mills, 66 Mich., 277; Jones v. Railway, 11 Texas Civ. App., 39; Railway v. French, 86 Texas, 96; Leary v. Railway, 2 N. E. Rep., 115.

The error in the charge given was not cured by any portion of the general charge. It was not simply an incomplete statement of the law,

but was a positive error—an unequivocal statement by the court of a principle which is not the law.    Alexander v. Robertson, 86 Texas, 511.

Allegations in an abandoned answer, which are irrelevant to any issue in the case are not admissible in evidence against the pleader.    McGregor v. Sima, 44 S. W. Rep., 1020; Prouty v. Musquiz, 59 S. W. Rep., 568; Welden v. Texas Cont. Meat Co., 65 Texas, 487; Duncan v. Magette, 25 Texas, 249.

*Hill & Hill* and *Oscar F. Oates,* for appellee.—The special requested instruction of appellee given the jury by the trial court was a proper charge in this case under the pleading, the issues joined, the evidence, the general charge of the court, and the special instructions given by the court at the request of appellant's counsel.    Railway v. Duvall, 12 Texas Civ. App., 354; Howard Oil Co. v. Farmer, 56 Texas, 301; Railway v. Higgins, 22 Texas Civ. App., 431; Railway v. Sanchez, 65 S. W. Rep., 897; Steel Co. v. Schymanowski, 44 N. E. Rep., 879; Thomp. on Neg., 974, 975.    And because the servant is experienced does not change the rule.    Railway v. Sanchez, 65 S. W. Rep., 895; 20 Am. and Eng. Enc. of Law, 2 ed., 147 (13), and authorities there cited.    Disobedience not justified by knowledge of danger.    Id., p. 148, citing: Frandsen v. Railway, 36 Iowa, 372.    Obedience is the primary duty of the servant, and he may within reasonable bounds trust to the superior judgment of his master.    Stephens v. Railway, 86 Mo., 221; Dallemand v. Saalfeldt, 48 Law. Rep., Ann., 758, note; Orman v. Mannix, 17 Law. Rep. Ann., notes, 603.

The submission by the trial court of appellee's requested instruction can not be affirmative error, because the very issue submitted by that charge was raised by the pleadings and developed by the evidence.    The charge itself was taken from the adjudged cases, what courts of authority in Texas and other jurisdictions have announced as the rule of law governing the issues.    Therefore, giving the charge referred to can not be affirmative error.    To be affirmative error the charge must be on a material issue and present such erroneous proposition as may have influenced the jury to return an improper verdict, and in the absence of which the finding might have been different.    Burcham v. Gann, 1 Texas U. C., 345; Mims v. Mitchell, 1 Texas, 443; Chandler v. Fulton, 10 Texas, 2; Bailey v. Mills, 27 Texas, 434; Edwards v. Dickson, 66 Texas, 616; 1 Sayles' Practice, secs. 581, 582.

The abandoned plea of appellant read in evidence by appellee alleging that plaintiff had loaded the car on the side track, and that it was his duty immediately after loading the same to properly seal all the doors of the car and to cleat or fasten all the windows before reporting the cars to the agent as loaded, was properly admitted by the court in evidence as tending to prove one of the issues raised by the pleading of appellee. Coles v. Perry, 7 Texas, 169; Barrett v. Featherstone, 89 Texas, 571; Blum v. Moore, 42 S. W. Rep., 857, 95 Texas, 273; Ogden v. Bosse, 86 Texas, 344.

The general rule drawn from the adjudged cases is that admissions in pleadings, though superseded by an amendment, may be admitted in evidence against the pleader as tending to establish the facts so admitted, like any other admission, subject, however, to be explained or contradicted by the party pleading the facts.  Railway v. Guilford, 40 S. E. Rep., 794; Schad v. Sharp, 95 Mo., 573; Fogg v. Edwards, 20 Hun, 90; New York Transp. Co. v. Hurd, 44 Hun, 17; Brown v. Pickard, 4 Utah, 292; Kilpatrick-Koch Dry Goods Co. v. Box, 13 Utah, 494; Oregon Ry. and Nav. Co. v. Dacres, 1 Wash., 195; Davidson v. Rothschild's Admr., 49 Ala., 104; Coward v. Clanton, 79 Cal., 23; Gale v. Shillock, 4 Dak., 182; McNail v. Welch, 26 Ill. App., 482; Juneau v. Stunkle, 40 Kan., 756; Bailey v. O'Bannon, 28 Mo. App., 39; Adams v. Utley, 87 N. C., 356; Peckham Iron Co. v. Harper, 41 Ohio St., 100; Norris v. Cargill, 57 Wis., 251; Daub v. Englebach, 109 Ill., 267; Soaps v. Eichberg, 42 Ill. App., 375; Railway v. Evarts, 112 Ind., 533; Murphy v. St. Louis Type Foundry, 29 Mo. App., 541; Linder v. Insurance Co., 93 Wis., 526; Bloomingdale v. Du Rell, 1 Ida., 33.

[From argument in support of a motion for rehearing, which was overruled.]  The general charge of the court and all the special instructions given should be construed all together and not in fragments, and when done it will be found that the law of negligence and contributory negligence is fully and fairly submitted to the jury.  Railway v. Lehmberg, 75 Texas, 66; Kauffman v. Babcock, 67 Texas, 243; Railway v. Smith, 65 Texas, 170; Railway v. Woodall, 2 Willson, Civ. Cases, sec. 474; Rost v. Railway, 76 Texas, 172; Baker v. Ashe, 80 Texas, 361; Railway v. McClain, 80 Texas, 98; Railway v. Calvert, 11 Texas Civ. App., 301; Halbert v. De Bode, 15 Texas Civ. App., 627; Railway v. Watzlavzick, 28 S. W. Rep., 116; Railway v. Stewart, 57 Texas, 170; Munsen v. Ellis, 3 Willson, Civ. Cases, sec. 135; Johns v. Brown, 1 White & W. Civ. Cases, sec. 1017; Moore v. Moore, 73 Texas, 382; Vaughn v. State, 21 Texas, 752; Railway v. Aylward, 79 Texas, 677.

This case came before the Supreme Court upon the statement and questions following, certified from the Court of Civil Appeals for the First District:

"In the above styled cause, now pending in this court on appeal from the District Court of Polk County, we respectfully certify for your decision the questions hereinafter propounded, which arise upon the following statement of the pleadings, evidence and charge of the court. Plaintiff sued to recover damages for personal injuries alleged to have been caused by the negligence of defendant's employes.  All of the petition containing allegations of negligence on the part of defendant is as follows:

"That on the day and date last aforesaid, to wit:  On the —— day of November, 1897, plaintiff was an employe of said defendant, in the town of Livingston aforesaid, acting and doing the business of porter and servant at defendant's station at said Livingston under and subject

to the order and control of said J. E. Burton, defendant's agent aforesaid; that on the day and date last aforesaid it was the duty of plaintiff, when ordered or directed so to do by said J. E. Burton, to seal the doors, seal and cleat or nail up the windows of freight cars on defendant's railroad track at Livingston station; that on the day and date last aforesaid said agent of defendant, J. E. Burton, ordered and directed plaintiff to seal a door, seal and cleat or nail up the window of a certain loaded freight car on defendant's railroad track at or near said Livingston depot or station; that plaintiff obeyed the order or direction of said agent and sealed the door of said car as directed; that it then became the duty of plaintiff to seal, cleat or nail up the window of the same car; that, to do this, plaintiff carefully and in the manner such work was usually and ordinarily done got upon and placed one foot on the dead wood at the end of said car and the other foot on an object on the end of the car which he could rest it on, this being the usual way such work is done; that plaintiff had sealed and partially cleated or nailed up the window of said car and was proceeding to finish the cleating or nailing up of said window of the car, and using due and reasonable care and prudence in doing this, when defendant's locomotive of a freight train, run by its engineer, John McBride, and with the tender and freight car or cars attached, on defendant's railroad track, unknown to plaintiff, and without blowing the locomotive whistle and without ringing the locomotive bell as required by statute, carelessly, negligently and without warning or notice to plaintiff (and unknown to plaintiff, though plaintiff was acting carefully), by means of the locomotive aforesaid, ran a freight car, unseen and unknown to plaintiff and unheard by him, with great force against the car on which plaintiff was standing and working as aforesaid, and thereby and by reason thereof jostled, jolted and violently knocked plaintiff off of the end of said car on which he was working onto the track of defendant's said railroad; that before plaintiff could save himself, though he used his utmost exertion to do so, he fell and his left foot was caught and crushed between the drawheads of two cars, caused by the momentum of the car on which plaintiff was standing and from which he was knocked as aforesaid, and the wheel or wheels of one of plaintiff's cars, put in motion by reason of the force aforesaid, ran over, crushed and mangled plaintiff's left leg or limb from and including his foot up to the knee joint, so that the said left leg or limb had to be and was by skilled physicians amputated above the knee on the same day of said injury. That plaintiff from and caused by said injury suffered great physical pain and mental anguish in having his lower limb or leg crushed, torn, mangled and amputated as aforesaid. That plaintiff suffered great physical pain and mental anguish, from said crushing of his leg and amputation thereof, for the space of three weeks, during which time he was confined to his bed, to his damage from causes aforesaid fifteen thousand dollars.

"Plaintiff alleges that when he was ordered or directed as aforesaid to

seal the door, to seal and cleat or nail up the window of said car, and when he went on to the railroad track to do it the said railroad track on which said car stood was clear of said locomotive and all danger. That plaintiff, in obeying the order aforesaid, expected, as he had a right to do, that the employes of defendant then on the ground at and near the said station and on the train there and at the depot knew that plaintiff was doing the work that he was directed and ordered to do as aforesaid, and that in case of any danger they would give plaintiff due notice and warning. That especially so as loaded freight cars, the doors thereof, had to be sealed and the windows sealed and cleated or nailed before being pulled out from the said station. That the car aforesaid had been pulled out by the locomotive in charge of the engineer thereof and the trainmen thereof, from the side or switch track, while loaded, to the main track, with one door unsealed and one window uncleated and unnailed, which by reasonable care and common observation would and should have been known, and was known, by defendant's employes operating and in charge of said train, and by defendant's said engineer, and by said J. E. Burton, and by the conductor of said train, and by the entire train crew, all then being on the ground.

"Plaintiff alleges that defendant's engineer and employes in charge of said train, and said J. E. Burton, and the conductor of said train, and the crew aforesaid, all then being at and on the ground and in rescue distance to plaintiff, did know the facts stated, and with gross negligence they failed and neglected to warn plaintiff of his danger and give him notice of the approach of said locomotive, they and each of them well knowing plaintiff's peril and situation at the time of the accident aforesaid, and this though plaintiff expected and relied on them to so give plaintiff notice and warning in case of danger or approaching danger.

"Plaintiff alleges and charges the facts to be: That defendant's said depot, station, main track, side track, switches and turnouts, at about and near where plaintiff was injured, were at the time of said injury situated in and a part of the public streets and blocks and avenues of the town of Livingston. That southerly and northerly from the point on the main track aforesaid where plaintiff was injured defendant's said main line of its railroad, at a point less than eighty rods, crossed public streets and public crossings and public roads leading across said railroad track east and west. That defendant's train or locomotive in pulling cars from its side track aforesaid, had to and did pass southwardly and over and across the said street and public road southwardly from the point where plaintiff was injured and less than eighty rods therefrom. That from one street crossing passing by where plaintiff was injured to the next street or public crossing northwardly was less than eighty rods. That defendant's said engineer and the employes in charge of said train negligently and with gross carelessness failed to blow the whistle of the locomotive at the distance of at least eighty rods from said crossings above and below plaintiff. That defendant's said

engineer and employes in charge of the locomotive aforesaid carelessly and with gross negligence failed to ring the bell of said locomotive at the distance of at least eighty rods from said crossing and so neglected to keep said bell ringing until the locomotive crossed each of said crossings; that at the point where plaintiff was injured on the main track for a distance of eighty rods north, and more than eighty rods south therefrom, was used (the entire main track of defendant's railroad), by defendant's consent and permission, and had so been used for fifteen years, as a public road, a public passway, and a public walk, by the public generally in going to defendant's depot, and the hotel at the depot. That defendant's employes ran its said engine, at the time plaintiff was injured, up and over said public way, and failed and neglected to blow the whistle or ring the bell during the time the locomotive was on or passing over said public way up to where plaintiff was knocked off of said car. That, had defendant's said engineer and employes in charge of said train rung the bell or blown the whistle at said crossing and over said public road and public passway along and over said railroad track, plaintiff would have known and been warned of the approaching locomotive and train and would have escaped injury by getting off of said car before the same was struck as aforesaid."

In answer to these allegations the defendant filed the following plea:

"And for answer herein defendant denies all and singular the allegations in plaintiff's said amended petition contained, and of this it puts itself upon the country: And specially answering this defendant says, that plaintiff's injuries of which he complains were brought about and were the result of his own negligence and carelessness in this: That the two cars between which plaintiff was standing just immediately before his alleged injuries, and from which he claims to have at that time fallen, were loaded with cotton and had been so loaded for some hours prior thereto; that plaintiff himself had loaded these two cars while they were on the side track at Livingston; that it was plaintiff's duty immediately after loading the same to properly seal all the doors of said cars and to make all other fastenings that were necessary preparatory for the taking out of such cars before reporting them to the agent as loaded; but that, instead of sealing the doors and before reporting them to the agent as loaded, as it was his duty to do and which he well knew, he failed to seal the same, and while in that condition he reported said cars to defendant's agent, Burton, as being loaded, which said agent, Burton, from the rules and customs of such work and manner of doing the same, believed that the doors to the cars were sealed and that all proper fastenings had been made; that plaintiff well knew the rules and customs as to sealing the doors and making proper fastenings, and that it was his duty as porter, when he loaded cars, to seal the doors and make all necessary and proper fastenings immediately after loading and before reporting the same as loaded, and he knew that in reporting cars as loaded it would be understood by the agent and train crew that the doors were sealed and all proper fastenings

made. That defendants said agent, Burton, did not know that the doors of said cars had not been sealed until so informed by defendant's conductor in charge of the train that pulled out said cars, and he at no time before plaintiff's injuries knew that the cars had windows in them, or, if there were any, that the windows required any fastenings, or but the same had been properly fastened. That when the conductor went into the side track for the cars he then discovered the doors on another and different car, which was then on the side track and then in the charge, care and control of defendant's agent, Burton, had not been sealed, and so informed the defendant's agent, Burton. That, immediately after being informed that the door of said car had not been sealed, said agent then started to seal the same, when plaintiff of his own accord took the sealing irons from said agent and went to seal the doors of said car while on the side track, and without giving any notice that the window had not been fastened and cleated. That after said cars had been taken from the side track where they had been loaded, out of the possession, custody and control of said agent, and taken into the custody and control of the conductor in charge of said train, and after the same had been placed upon the main line of defendant's road, and while being placed in the train and while the train crew were doing switching with the engine upon the main line, setting in and taking out cars, which was being done in a careful and cautious manner and in the usual and customary way, which work of said train crew and the moving of said cars was then known to plaintiff, he (the plaintiff), without the knowledge of said agent, Burton, or the conductor in charge of said train or any of the said train crew, went between said cars and so stationed himself upon a car that he was not requested or instructed to seal or fasten, and attempted to fasten the window in said car, which was then in the exclusive control of defendant's said conductor, that his position was unknown to either the said agent, the said conductor, or any of the said train crew; that plaintiff negligently and carelessly placed himself between said cars in such a position and in such a manner that his whereabouts and the work or business he was engaged in was not known to said agent, to said conductor, or any of the said train crew. That when plaintiff went between said cars he ought to have known and did know that his position between the same was unknown to said agent and to said conductor and said train crew. That plaintiff ought to have known and did know that in going between said cars he was exposing himself to great danger and risk, and that in going and remaining between said cars as he did plaintiff knew and ought to have known that he would likely be knocked and jolted from between the cars as he was; that he ought to have known and did know that the engine was then doing switching and that the said two cars would necessarily be moved by the engine; but notwithstanding the dangerous and hazardous position he had voluntarily placed himself in, and which he well knew, and without the knowledge of either the said agent, conductor or any of the said train crew, he negligently and carelessly remained in said position

until the said engine was backed against one of said cars, when plaintiff fell from same. That, in the handling and moving of said train, cars and engine, the same was done carefully and cautiously and in the manner and way that was usual and customary, and plaintiff well knew that the cars between which he had gone would be moved in the manner and about the time they were moved and that in coupling the engine to these cars, which would necessarily have to be done, that there would be more or less jarring and jolting, and that the jarring and jolting would unavoidably be sufficient to cause him to fall from the position he had as aforesaid voluntarily placed himself in. That neither defendant's said agent, Burton, its said conductor, or any of its said train crew knew that there were any windows in either of said cars, or if there were any that there was any necessary cleating or fastening to be done, until after plaintiff fell from between the same, nor did they or either of them know or have any reason to believe that plaintiff was about or between said cars. That plaintiff, in going and remaining between said cars and attempting to cleat the same, was then doing that which he was not required, ordered, directed or expected to do, and was then acting outside the scope of his duty as porter or servant of the defendant; all of which plaintiff ought to have and did know.

"Defendant further says that plaintiff's position between said cars was such that it was impossible for said agent or any of said train crew to know of same or to know the work he was then doing or the business he was engaged at, nor did either or any of them have any cause to suspect or know of plaintiff's position or the work he was then doing or the business he was engaged at. That plaintiff ought to have known and did know that his going and remaining between said cars was unknown to defendant's said agent and to its said conductor and its said train crew, and that he was assuming great risk in going in and remaining between said cars as he did; that it was through the fault, carelessness and negligence of plaintiff alone, in the manner aforesaid, and not the fault, carelessness or negligence of this defendant, or any of its agents, servants or employes, that plaintiff received any of the injuries of which he complains. Wherefore defendant says that plaintiff should not recover in this behalf, and of this it puts itself upon the country."

The evidence of plaintiff is in substance that he was employed by the defendant as porter at its depot in the town of Livingston; that among the duties of his employment was the loading, sealing and cleating of cars used by the defendant in hauling freight from said station. He was under the orders of J. E. Burton, defendant's station agent at said depot, and it was his duty to obey the orders of the agent. On the morning of the accident he had loaded a car with cotton on defendant's side track near its cotton platform, and started to the depot to get the sealing irons for the purpose of sealing the car, when he met the agent, Burton, who gave him a telegram and directed him to take it up town and deliver it. Upon his return from this errand he met Burton near the cotton platform with the sealing irons in his hands and was asked

by him why he had not sealed the car. He replied that it was because he had been sent to deliver the telegram. Burton then gave him the irons and ordered him to go and seal the car. After taking the irons from Burton he went up the side of the platform and got a cleat with which to cleat the window of the car and then went upon the platform and got some nails. In the meantime the car had been taken from the side track, by the crew of a freight train which ha'd come into the yards while plaintiff was delivering the telegram, and placed on the main track to be put into the train which was being then made up. Plaintiff went to the car as it stood on the main track and sealed the door. He then got upon-the end of the car to cleat the window, and while so engaged the train crew who were operating the engine engaged in making up the train, without any warning to plaintiff, ran the engine with a car attached thereto down on the main line, suddenly striking the car on which plaintiff was at work and causing him to fall. He fell on the ground on his back, and the wheels of the car on which he was at work ran over his leg and so injured it as to require its amputation. At the time Burton told plaintiff to go and seal the car the conductor of the train, who was in charge of the crew who were doing the switching at the time the plaintiff was injured, was within a few feet of them. Plaintiff did not know at the time he was told to seal the car whether it was then on the side track or had been switched to the main track. The engine was then engaged in switching. There was evidence to the effect that Poindexter, who was a brakeman on the freight train and one of the crew doing the switching, had stated that he knew plaintiff had been at work sealing the car on the main line, but thought he had gotten through and gone at the time the engine was backed against the car. It was against the rules for an unsealed car to be put in the train. The conductor knew that this car was unsealed and had reported the fact to the agent. He does not say whether he heard Burton order plaintiff to seal the car, but testifies that the door of the car was sealed on the side track after he notified the agent of its unsealed condition, and that it was not moved from the side track until after it was sealed. The agent, Burton, testified that when he ordered the plaintiff to go and seal the car it was standing on the side track and had not been moved by the switching crew. It would not require more than two minutes to seal the door of a car, and to cleat a window it was only necessary to place a small strip of lumber across the window and fasten it with two nails.

The entire charge of the court is as follows:

"Gentlemen of the jury: . I give you in charge the following rules and instruction to guide and assist you in arriving at your verdict:

"This is a suit brought by the plaintiff to recover of the defendant, the Houston East & West Texas Railway Company, damages for personal injury which the plaintiff alleges he sustained through the negligence of the defendant's servants or employes in operating its train or

a portion thereof, near the company's depot in the town of Livingston, on the —— day of ——, 1897.

"The defendant company denies the material allegations of plaintiff's petition and pleads contributory negligence on the part of the plaintiff; and it becomes necessary for the court to define for you what is meant by the terms 'negligence' and 'contributory negligence,' and also what is meant by the term 'ordinary care.'

" 'Negligence' is the failure to exercise or use that degree of care and caution that persons of ordinary prudence would use under the same or like circumstances.

" 'Contributory negligence' is such negligence on the part of the person injured as directly or proximately helps to produce or contributes in producing the injury and without which the injury would not have happened.

" 'Ordinary care' is that degree of care that persons of ordinary prudence would use under the same or like circumstances.

"You are charged that if J. E. Burton, the defendant's station agent at Livingston, ordered the plaintiff to go and seal and cleat- (or do either) the car while on the side track near the depot at Livingston, and the plaintiff, in obedience to Burton's order, went upon the side track and performed a part of the work ordered to be done, but had not finished the work when the car was moved upon the main line, and after the said car was moved on to the main line the plaintiff resumed his work on said car and was engaged in said work when the engine and car or cars attached to it were backed up against the car on which the plaintiff was engaged in his work, and the plaintiff was thereby knocked against the cars and thrown to the ground and injured as alleged by him, and further you find from the evidence that the defendant's servants or employes operating the engine and portion of train attached to it were guilty of negligence in so backing up the train against the car on which the plaintiff was at work and the plaintiff himself was not guilty of contributory negligence, then the plaintiff would be entitled to recover.

"If the servants or employes, or either of them, of defendant company operating the train expected or had reason to believe that the plaintiff was between the cars at the time they were about to back the train, then it was their duty in some manner to give the plaintiff timely warning that the cars were being backed, in order that he might get away or by some means protect himself against danger; and the failure to give such warning under the circumstances mentioned would constitute negligence which would render the defendant company liable unless plaintiff himself was guilty of contributory negligence in being where he was at the time of the accident.

"If you find from the evidence that J. E. Burton did not order the plaintiff to seal and cleat, or do either, the car while on the main track, and the plaintiff went upon the car when on the main line to complete his work begun on the side track, and further you find that a person of

ordinary care and prudence would not have gone between the cars (or at the place where plaintiff took his position) to finish his work on the car at the time he did and under the circumstances of the situation, then the plaintiff can not recover, and if you so find you will return a verdict for the defendant company.

"You are instructed that if the conductor or other trainmen operating the train had knowledge of the fact that De Walt had undertaken the work of sealing and cleating the car while on the siding, the question then is: Did the conductor or other trainmen who had such knowledge act as persons of ordinary care and prudence in assuming that De Walt had completed his work and gone, or should they, in the exercise of ordinary care, have taken the pains to ascertain with certainty whether he continued the work on the main track, before they moved and backed the train? If, having such knowledge, they did not act as men of ordinary care and prudence would have done under the circumstances as indicated when they backed up the train against the car on which plaintiff was at the time of the accident, then they were guilty of negligence.

"If under such circumstances the conductor and other trainmen acted as men of ordinary prudence would have done, then upon this phase of the case they would not be guilty of negligence.

"If you find that the defendant company's employes were guilty of negligence as charged, and you also find that the plaintiff was guilty of contributory negligence, then you will return a verdict for the defendant company.

"If you find for the plaintiff, then you will return a verdict for such amount of damages as will fairly and justly compensate him for the injuries sustained by reason of the accident, and you will take into the estimate the physical and mental pain and suffering, if any, occasioned thereby; the reasonable medical or surgical expenses, if any, incurred thereby; and the plaintiff's diminished capacity, if any, to labor and earn money in the future, considering the probable duration of his life.

"If you do not find for the plaintiff then let your verdict be for the defendant, the Houston East & West Texas Railway Company.

"You are charged that the burden of proof is upon the plaintiff to establish the negligence of which he complains by a preponderance of the evidence, that is, by the greater weight of credible evidence; and when the preponderance of evidence establishes the negligence as charged against the defendant, then the burden of proof is upon the defendant to establish contributory negligence on the part of the plaintiff.

"And in determining the question of negligence and contributory negligence and ordinary care, you will look to all the testimony before you and draw your conclusions from all the evidence before you—you being the exclusive judges of the facts proven, the credibility of the witnesses, and the weight to be given to the testimony. The law of the case you receive from the court and must be governed thereby."

Plaintiff's special charge No. 8. "You are instructed that a servant

of a railway company must obey the orders of his superiors and those over·him, as that is his primary duty, and if the work required is extra hazardous the company is responsible for the master's orders being obeyed."

"Defendant's special charge No. 4. "Every person owes it to himself to use ordinary care and caution in guarding against danger and protecting himself from injury. Ordinary care and caution, as herein used, is such as a prudent man would exercise under similar circumstances.

"Now, if you believe from the evidence before you that the plaintiff Cole De Walt, in going between the cars or there remaining as he did at the time and under the circumstances surrounding him when he was hurt, did not use ordinary care and caution (as such care and caution is herein defined), and that his going between the cars or remaining there contributed to· the injury he received and of which he herein complains, and if you believe that the defendant's agents and servants in charge of the train from which plaintiff fell were not apprised of the dangerous position of De Walt in time to save him from the injury, the plaintiff can not recover in this case. And if you so believe, let your verdict be for the defendant company."

Defendant's special charge No. 8. "The defendant requests the court to instruct the jury as follows:

"If you believe under the evidence in this case that the employes of the defendant operating its train at the time plaintiff was hurt did not know that the plaintiff was on the car he was, and under all the circumstances of this case had no reason to believe that he was on the car, then the plaintiff is not entitled to recover and your verdict should be for the defendant, no matter what you may find the other facts to be."

"Given with this addition: After the word 'car' in third line from the bottom insert the words, as follows: 'And provided that the conductor or other trainmen (if they had the knowledge of the fact that the plaintiff had commenced work on the car while on the siding) acted as men of ordinary care and prudence would have done under the circumstances in assuming that the plaintiff had finished his work and gone.' "

The appellant complains of special charge No. 8, given at the request of plaintiff, which is as follows:

"You are instructed that a servant of the railway company must obey the orders of his superiors and those over him, and that is his primary duty, and if the work required is extra hazardous the company is responsible for the masters orders being obeyed."

Questions: 1. Was this a proper charge under the pleadings and evidence before set out?

2. If erroneous, were its defects cured by any portions of the charge given the jury, or is it such affirmative error as requires a reversal of the judgment?

The evidence was conflicting on the issue as to whether it was plaintiff's duty to cleat the window as well as to seal the doors of the car.

The order given by the agent to plaintiff was to go and seal the car, and the testimony offered by the defendant on this issue was to the effect that it was not proper or necessary to cleat the window, and that in so doing the plaintiff was not in the performance of the duties of his employment and was exposing himself to unnecessary risks.

Upon this issue the plaintiff introduced, over defendant's objection, an abandoned pleading of the defendant in which it is alleged that plaintiff had loaded the car on the side track, and that it was his duty immediately after loading same to properly seal all the doors to the car and to cleat or fasten all the windows, and to have so sealed the doors and cleated or fastened the windows before reporting the car to the agent as loaded.

Question: Was this abandoned plea admissible in evidence against the defendant as an admission that plaintiff was acting in the performance of his duty in cleating the window of the car?

WILLIAMS, Associate Justice.—1. It is not true that servants of railway companies are held bound by the law under all circumstances to obey the orders of their superiors. Obedience to an order may involve personal risk so great and so obvious that no prudent man should take it. The master or his representative has no right to give nor is the servant bound to obey such an order. Nor is it necessarily true that, if work which the master orders the servant to do is extra hazardous, the master is responsible to the servant for the consequence of obedience. If the work be of so dangerous a character as we have just instanced, the servant, if he takes the risk of doing it, will not be heard to complain in the courts. The statement of the rule in the special charge was in an abstract and comprehensive form, without a qualification which was essential to its accuracy. A jury following it according to its terms would be bound to conclude that, if the servant were injured as a consequence of his obedience of an order of his superior, the master would be responsible, in law, for the damage inflicted, whatever might be the character and degree of the danger incurred. The defense involved the contention that the order to seal up the car only meant that the plaintiff should do so while the car was on the side track, and that, in following it upon the main track and there exposing himself to increased perils, plaintiff went beyond the terms of the order. If this is true and plaintiff was not hurt while acting in obedience to the agent's order, the special instruction had no application. But the plaintiff's theory, reflected in the instruction, evidently was that the order required the work upon the car, whether at one place or the other, and was being executed when the injury occurred. This was a question for the jury, and, in case they sustained this contention of plaintiff, the further question arose for their decision, whether or not the situation involved such risk that plaintiff as a man of ordinary prudence ought not, under all the circumstances, including the order, to have undertaken to do the work as he did. The general charge and special

charges given for defendant submitted this question as one of negligence vel non, but special charge No. 8, applied in this connection, virtually instructed without qualification, that, if the work was extra hazardous and plaintiff in doing it was obeying the order, defendant would be responsible. This was, in effect, to tell the jury that the order, if obedience to it brought about the injury, removed any question as to plaintiff's negligence as submitted in other instructions. At least the jury might naturally thus reconcile the differing instructions, and such instructions, if not thus reconciled, would be in such conflict as to confuse the jury. In either view there was error which the appellate courts can not say was harmless.

We answer the first question and the first branch of the second question in the negative. Assuming that the question of reversal or not depends alone upon the instructions, the pleadings and evidence stated, we answer the second branch of the second question in the affirmative.

2. A defendant has the right to plead inconsistent defenses, and where in one part of an answer he denies or otherwise puts in issue a fact and in another part alleges its existence, the answer can not be taken to be an admission of such fact. Duncan v. Magette, 25 Texas, 246. Many other rulings of this court affirming this proposition might be cited. But this is true, not because admissions in pleading are not admissible against the party making them, but because a plea, in one part denying a fact and in another part affirming it, can not, under our statute, be treated as an admission of the fact. Abandoned pleadings when offered in evidence should doubtless be construed in the same way, and not be admitted as conceding a fact both affirmed and denied. But this rule has nothing to do with the admissibility of pleadings in evidence as tending to show a fact which they distinctly allege. If a fact be admitted in the pleadings on which the case is tried, it is, in general, assumed without other evidence to be conclusively established for the purposes of the trial. Ogden v. Bosse, 86 Texas, 344. The same rule can not be applied to pleadings superseded by amendment, but it does not follow that distinct admissions in them of particular facts can not be used as evidence against the party who filed them. The admission of a party thus made is admissible against him under the rule of evidence which allows admissions against interest. Of course they are open to explanation or contradiction like other admissions. It is sometimes the fact that allegations are made by the attorney drawing pleadings upon a misunderstanding of the facts and not by authority of the party, and this of course may be shown. All that appears here as to this is that the superseded answer contained the allegation offered in evidence, and we think that pleadings which have been filed in court in behalf of a party should be, prima facie at least, regarded as authorized by him and admissible against him, where they admit facts relevant to the issue. This court has recently had occasion to review this subject and to point out that the question under consideration was not decided

in Coats v. Elliott, 23 Texas, 606, the expressions in which have given rise to most of the difference of opinion that has arisen in this State. First National Bank v. Watson, 95 Texas, 351. The case of Barrett v. Featherstone, 89 Texas, 567, is one in which the question was fully considered in the majority and dissenting opinions of the Court of Civil Appeals of the Second District, and in which this court held with the majority affirming the admissibility of the evidence. The plea in that case was signed and sworn to by the party himself, and this made it certain that the admission was his own and perhaps added to its weight as evidence, but its admissibility did not depend on those circumstances. The certificate shows only that the fact in question was alleged in the plea offered in evidence, by which we understand that such fact was admitted and not otherwise put in issue. Such being the case the plea was admissible.