### DALLAS RAILWAY & TERMINAL CO. v. HENDRICKS.

#### No. 13034.

Court of Civil Appeals of Texas. Dallas.

May 30, 1941.

On Rehearing Aug. 1, 1941.

Dissenting Opinion Oct. 17, 1941.

Burford, Ryburn, Hincks & Charlton, and W. Mac Taylor, Jr., all of Dallas, for appellant.

Cedric G. Hamlin, of Dallas, for appellee.

BOND, Chief Justice.

Ida May Hendricks recovered judgment in a district court of Dallas County, Texas, against Dallas Railway & Terminal Company, for damages on account of personal injuries, medicine and doctor's bills in the sum of $1,308, alleged to have been caused by negligence of the Railway Company, its agent and servant, in starting the street car, on which she was a passenger, with a sudden jerk, before she had a reasonable opportunity to seat herself or find a hand-hold, thereby throwing her forward on her stomach, across a twelve-inch "step

up" or riser, from the vestibule into the aisle of the street car; resulting in injuries to her left leg, back, muscles, ligaments, nerves, kidneys and bladder. She claims that such injuries aggravated a chronic arthritic condition of the lumbar region of her back and caused blood to pass, for a number of days, from her kidneys and bladder. It is difficult to understand the medical jurisprudence as related by expert medical witnesses in this case, to the effect that injury to the kidneys and bladder causes them to pass blood, and that a chronic arthritic condition of the back or lumbar region of a human body, could result from a fall on the stomach, on a perfectly flat floor, by a strong, active, healthy housemaid or servant. However, in view of our disposition of this appeal, we deem it unnecessary to discuss the evidence bearing on the theoretical alleged injury suffered by Ida May Hendricks, and the excessive verdict of the jury. Suffice it to say, we think the jury was rather liberal in assessing $1,308 damages for an aggravation of a pre-existing chronic arthritic condition of plaintiff's back, and the claimed injuries to her kidneys and bladder, from a fall on her stomach.

On the trial of the cause, defendant sought to have the prior existing infirmities, admitted in pleadings and raised by evidence, affirmatively eliminated from consideration of the jury; that plaintiff is entitled to recover only to the extent her ailments were aggravated by defendant's negligence, if any, and that the jury should not consider suffering from an infirmity not caused by the accident. The defendant made timely objection to the court's charge (Issues 29 and 30) relating to the amount of recovery for plaintiff's past and future diminished capacity to work and earn money, physical pain, and mental suffering resulting directly and proximately from the injuries sustained by her on the occasion and at the time of her injury, and the amount of the doctor's bills as a result thereof. In the case of Dallas Ry. & Terminal Co. v. Ector, 131 Tex. 505, 116 S. W.2d 683, 685, Judge Hickman, speaking for the Supreme Court said:

"It has long been a settled rule in this state that, where a plaintiff in a personal injury suit is suffering from an infirmity not caused by the accident which is the basis of the suit, and where the injuries flowing from the prior existing infirmity and those flowing from the negligence of the defendant are closely connected and intermingled to the extent that the jury might become confused and allow for improper elements of damages, the trial court should affirmatively charge the jury that plaintiff is entitled to recover only to the extent that his injuries were aggravated by the defendant's negligence. In cases submitted upon a general charge that rule has been many times announced and applied. St. Louis Southwestern Ry. Co. of Texas v. Johnson, 100 Tex. 237, 239, 97 S.W. 1039; Gulf, C. & S. F. Ry. Co. v. McMannewitz, 70 Tex. 73, 8 S.W. 66; Galveston, H. & S. A. Ry. Co. v. Coker, Tex.Civ.App., 135 S.W. 179, error refused; Gulf, C. & S. F. Ry. Co. v. Brown, 16 Tex. Civ.App. 93, 40 S.W. 608, error dismissed; 17 C.J. 1074, § 378."

On the question, Dr. Nash testified that the arthritic spurs shown in the X-ray of Ida May Hendricks' spine could very easily have been formed within the period of one year, and it was his opinion they were caused by the fall; and he further testified that the medical profession did not know what causes arthritis. It is conceivable that the jury believed Ida May Hendricks' fall caused the arthritis, and having confined herself, by pleading, to aggravation of such pre-existing condition, the court should have confined the jury's consideration of damages to the element of aggravation. The Railway Company was entitled to an affirmative exclusion of such element of damage, past and future, as might be attributable to prior existing arthritis of the injured plaintiff. On another trial, the charge of the court should specify the elements to be considered by the jury in measuring plaintiff's damages, and, in addition thereto, specify such elements not subject to be considered.

Appellant further complains of the action of the trial court in allowing plaintiff, over its objection, to introduce in evidence its abandoned pleadings, and the testimony of appellant's attorney that he prepared such pleadings; also prepared subsequent pleadings on which defendant went to trial. The objectionable pleadings interposed a general denial, followed by special plea that, at the time of the alleged accident, "plaintiff proceeded from the front of the car to the rear; without fault on the part of the operator of the street car, she stumbled and fell; that during all of said time, the street car remained motionless; and that plaintiff's injuries, if any she sustained, were the result of her own failure to exercise ordinary care for her own

safety." Plaintiff then offered the testimony of Mr. Taylor, attorney for the Railway Company, and he was compelled to testify, over defendant's objection, that he "prepared the pleadings, predicating the first on the allegation that the street car remained motionless all the while, and that there was no allegation that the street car might have been moving; and, in the subsequent pleading, alleged that the street car remained perfectly motionless and that her (appellee's) fall was due to certain acts of her own; and, in the alternative, if it is shown to have moved, it started in the usual manner." The record shows that the testimony was sharply controverted on the issue of whether the street car was at a standstill, and appellee's injuries the result of her own negligence. It could hardly be said that the abandoned pleadings were an admission on the part of the Railway Company, or were beneficial to plaintiff's theory of the case, based on the street car having started with a sudden and violent jerk, and being in motion at the time Ida May Hendricks fell to the floor. Plaintiff's attorney frankly stated that the abandoned pleading and testimony of defendant's attorney were offered "just to show he (appellant's attorney) had changed his mind," this admission being made when they were admitted in evidence. It is clear, we think, that the abandoned pleadings and testimony of the attorney for the Railway Company were offered to prejudice the jury on the change of defense, and were not offered as an admission of fact, either in favor of plaintiff's cause of action, or against the defendant. It could have no effect other than to prejudice the jury against the Railway Company for pleading inconsistent defenses, which it had a clear legal right to plead; and we think it was offered for prejudice, and calculated to accomplish that result. Courts may not sanction the introduction of evidence, merely to prejudice the rights of litigants.

Where plaintiff contends that she was injured as the result of the starting of the street car with a sudden jerk, and the defendant answered that, at the time of plaintiff's fall, the street car was motionless; and, in the alternative that, if the street car did move at the time of plaintiff's fall, then it started in the usual and customary manner, with no unnecessary, violent jerk. It was reversible error for the court to admit in evidence, over defendant's timely objection, its abandoned answer, wherein it had plead that the street car was motionless, with no alternative plea; such pleadings are not an admission of fact. Art. 2006, T.S.1925; Houston, E. & W. T. Ry. Co. v. De Walt, 96 Tex. 121, 70 S.W. 531, 97 Am.St.Rep. 877; Missouri, K. & T. R. Co. v. Maxwell, Tex.Civ.App., 130 S.W. 722.

On motion for a new trial, appellant contends that the jury was guilty of misconduct, in relating facts (not raised by pleadings or disclosed by evidence) calculated to prejudice the jury, and attempt to answer the special issues to effect a judgment in favor of plaintiff; thus depriving the Railway Company of a fair and impartial trial; on account of which, the trial court erred in refusing to set aside the verdict and grant a new trial. We have carefully considered the assignments, and deem it unnecessary to discuss the testimony offered on the motion. Such misconduct will likely not occur on another trial. However, we think the conduct of the jury was such that defendant's motion for a new trial should have been granted.

Reversed and remanded.

### On Rehearing.

LOONEY, Justice.

On original submission, the Court reversed the judgment below and remanded the cause in an opinion by Mr. Bond, Chief Justice. After duly considering the case on appellee's motion for rehearing, for reasons that will be stated, the majority reached the conclusion that the Court erred; the following is adopted as the majority opinion in the cause:

Ida May Hendricks sued the Dallas Railway & Terminal Company for damages alleged to have resulted from personal injuries sustained while a passenger on one of the Company's street cars, by being thrown or caused to fall to the floor of the car, across the iron rim of a step-up, about twelve inches in height, from the vestibule or entrance to the main part of the car. The grounds of actionable negligence alleged were that, the operator of the street car was guilty of negligence, (1) in putting the car in motion before plaintiff was afforded a reasonable opportunity to procure a seat; (2) in starting the car before she had a reasonable opportunity to find a handhold or strap, with which to brace herself; and (3) in starting the car with a sudden jerk, in an unnecessarily violent manner.

The defendant's answer contained a general denial and special pleas to the effect that, at the time plaintiff fell, the street car was either motionless, or was moving in the usual and customary manner, was not suddenly or violently jerked, and that, in either case, plaintiff's injuries, if any received, were the result of her own negligence in failing to watch where she was stepping; in failing to hold on to the handholds, rods and straps provided for her safety; in failing to maintain her equilibrium; in failing to anticipate the motion of the street car; and in stumbling over the step from the vestibule into the main body of the car.

In response to the court's charge, the jury found the defendant guilty of actionable negligence in the three respects, as alleged, and acquitted plaintiff of all charges of contributory negligence; assessed her damages at $1,250 for personal injuries and $58 for medical bills; for which amount, the court rendered judgment, from which the defendant appealed.

■ No assignment is presented, questioning the sufficiency of the evidence to sustain either of the findings of the jury, except the finding assessing plaintiff's damages. The issues submitted, in our opinion, were authorized by both pleading and proof, and the answers of the jury being sustained by ample evidence, are adopted as our conclusions of fact on the respective issues, hence it is our opinion that the judgment of the court below should be affirmed, unless reversible error is shown.

In its first and second propositions, the defendant contends that reversible error was committed in admitting, over objection, its abandoned first amended answer. We think it incorrect to say that an abandoned pleading was introduced. What occurred, in short, was this: The defendant's first amended answer contained an allegation to the effect that, at the time plaintiff fell and sustained her alleged injuries, the street car was motionless, and that her fall was due to her own negligence in several particulars. In its third amended answer, the defendant brought forward the identical allegation, but added, in the alternative that, if in fact the street car was in motion at the time, it started in the usual and customary manner, without unnecessary violent force, and that plaintiff's fall and injuries, if any, were due to her own negligence in several respects, etc. The net result of the procedure, as announced by plaintiff's counsel at the time, was to show that the defendant had changed its pleading and its position by introducing the alternate plea in the third amended answer.

■ We think the court erred in admitting proof of that fact, as the defendant was within its right in pleading in the alternative, but the error, in our opinion, was entirely harmless. The paragraph of the defendant's answer offered in evidence, was not an excerpt from an abandoned pleading, but constituted one of the defenses urged at the trial, hence the ruling of the court, although improper, deprived the defendant of no right.

Defendant's third proposition reads: "Where the plaintiff in a suit for personal injuries alleged to have been sustained while a passenger on defendant's street car alleged in her petition, and the evidence showed that at the time of such alleged injury she was suffering from a chronic arthritic condition, and that such condition was aggravated by the injuries alleged to have been sustained, the court in submitting the issue on damages should have limited the recovery to the aggravation, if any, occasioned by the accident in question."

It will be observed that plaintiff alleged and the evidence showed that, prior to and at the time she received the injuries of which complaint was made, plaintiff had suffered and was then suffering from a chronic arthritic condition. The pertinent allegations in plaintiff's petition are as follows: "That a chronic arthritic condition of the lumbar region of her back was aggravated, in that prior to such injury such condition caused her no pain or incapacity, but that immediately following the injuries aforesaid, such condition became acute and, has caused her much pain and physical suffering and has incapacitated her to the extent hereinafter shown. That but for the injuries detailed in the first subparagraph hereunder (Par. 4) such chronic arthritic condition would not have become acute or resulted in the incapacity hereinafter set out." All the evidence introduced concentered around the subject of aggravation, that is, whether or not the injury received was calculated to aggravate the chronic arthritic condition, and the extent thereof. In this situation, the court charged on the measure of damages, as follows: "What sum of money,

if any, if paid now in cash, do you find from a preponderance of the evidence, will reasonably compensate Ida May Hendricks (different elements of damages are here mentioned) resulting directly and proximately from the injuries, if any, sustained by Ida May Hendricks on the occasion and at the time inquired about herein?"

The defendant objected to the charge on the ground that it permitted the jury, in assessing plaintiff's damages, to take into consideration her chronic arthritic condition, and that the charge should have been limited to the aggravation occasioned by the injuries received.

It will be observed that there was no issue in regard to plaintiff's chronic arthritic condition at the time of her alleged injuries; she admitted the fact in her petition and sought recovery only for the aggravation, and the evidence adduced was only in regard to aggravation and the extent thereof. If an issue as to whether or not a chronic arthritic condition existed prior to the injury, the court should have limited the inquiry to the aggravation; but as there existed no such issue, the court was not required to submit that question, as only controverted questions of fact are required to be submitted. Art. 2185, R.C.S.

The case relied upon by the defendant as controlling authority is that of Dallas Ry. & Terminal Co. v. Ector, 131 Tex. 505, 116 S.W.2d 683, 685. That case differs radically from the case at bar, as is shown by the following excerpt; in stating the nature of the case, Judge Hickman said: "Mrs. Ector alleged in her petition, and testified as a witness, that she sustained an injury to her back as a result of the collision. The railway company offered testimony to the effect that Mrs. Ector had been suffering from some prior kidney disorders and that a part of the injuries which she received, if any, were but an aggravation of her prior kidney trouble. The fact of the existence of a prior kidney trouble was denied by Mrs. Ector and her witnesses. It thus appears that an issue of fact was sharply presented as to whether Mrs. Ector was suffering from a kidney trouble prior to and at the time of the collision and as to whether or not a part of her suffering was attributable to the prior condition of her kidneys." So, we conclude that the objection urged to the court's

charge, in the instant case, is not tenable, as no issue of fact existed, requiring a charge upon the subject.

Among other grounds for a new trial, the defendant complained of alleged misconduct of the jury, of a material nature, and assigned error on the action of the court in overruling same. These errors are presented in propositions Nos. 4, 5 and 6. In proposition 4, it is revealed that the first vote, taken by the jury on whether or not plaintiff was guilty of contributory negligence, stood nine for acquitting her and three for conviction; the three jurors voting in favor of finding plaintiff guilty of contributory negligence were Teagarden, Gray and Houston. At this juncture, Juror Freeland observed that if the issues on contributory negligence were answered against the plaintiff, the verdict would be contradictory, and the whole case would be thrown out; that the only way to show plaintiff's negligence would be by cutting down the amount of the award. Mr. Greenwood, the foreman, then admonished the jurors, stating, "that we were not concerned with the legal technicalities in the case; that all we could do was to render what we thought was a just verdict and it was up to the lawyers and the court about whether or not it stood up." It seems that Mr. Freeland, who made the suggestion, voted with the majority; and the three who at first voted in the minority, later acceded to the views of the majority and made the verdict unanimous. Mr. Houston did not testify and we hear no more about him in this connection; but Teagarden and Gray testified. Neither indicated that he was influenced by the statement of Freeland; in fact, Gray testified he didn't agree with Freeland's idea, and their vote on the amount of the award indicates that they paid no attention to the suggestion, for, originally, Teagarden was in favor of awarding only $58, the amount of medical expenses, and Gray was in favor of $500; these same jurors subsequently agreed to the verdict of $1,250 and $58 medical expenses.

In proposition 5, defendant complains that, during their deliberations, one of the jurors made the statement that the type of car, with the "step-up" from the vestibule to the main body was antiquated and that it was up to the defendant to assume responsibility. The foreman testified, "At this juncture, I read the Judge's charge to

them, and the question, and told them that neither side had brought out there was any default in the equipment, and we were not concerned with the kind of street car which they were operating. Q. Was anything else said with reference to that? A. No, sir. They agreed with me on that."

In proposition 6, the defendant complains that, during their deliberations, one of the jurors stated that plaintiff would have to pay an attorney's fee. Again the foreman admonished the jury, stating: "I told them we were not concerned with any trade Ida May Hendricks made with her attorney and read them the judge's charge.

"Q. Did they stop then? A. Yes, sir.

"Q. Was it repeated? A. No, sir."

■ Mr. Teagarden testified that when irrelevant statements, such as have been mentioned, were made, "Some other juror would remind the jury that we must not consider outside questions, and as far as I could tell, the jury accepted that." This juror also testified that, although at first voting in favor of finding plaintiff guilty of contributory negligence, after considerable discussion and argument, changed his vote and acceded to the views of the majority. The testimony of Juror Gray is to the same effect, and neither indicated that he was, in any sense, influenced by any of the extraneous statements made, but, in the usual and ordinary manner of arriving at verdicts, each abandoned his original position and adopted the view of the majority. We do not think the trial court abused its discretion in overruling defendant's contentions as to the alleged misconduct of the jury. See Bradley v. Texas & P. Ry. Co., Tex.Com.App., 1 S.W. 2d 861; Russell v. Adams, Tex.Civ.App., 18 S.W.2d 189, 193. In the latter case the court, among other things, said: "We think it clear that, if all that occurred in the jury room was the mention of the fact that the evidence indicated that appellants had insurance on their automobile, and that when this fact was mentioned the foreman told the jury it should not be discussed or considered, and it was not thereafter discussed or considered, no misconduct of the jury was shown."

■■ In its 7th proposition, the defendant contends that the court erred in submitting to the jury the issue of negligence, based on whether or not the street car started before plaintiff had a reasonable opportunity to find a seat; also, in proposition 8, contends that, the court erred in submitting the issue of negligence, based on the fact, whether or not, the street car started before plaintiff had a reasonable opportunity to find a hand-hold with which to brace herself. These issues were based upon grounds of negligence alleged, and, in our opinion, were authorized by the evidence. We are not authorized to say, as a matter of law, that the defendant would not be guilty of negligence in starting the street car with a jerk, before a passenger had a reasonable opportunity to find a seat or to grasp a hand-hold with which to brace herself; these were the issues of fact presented by both pleading and proof, hence it was a question for the jury to say whether or not negligence existed.

■ In proposition 9, the defendant contends that the court erred in requiring the jury to answer: " * * * whether or not the operator started the street car with a sudden jerk, since such issue is not supported by the pleadings." In paragraph 2 of her petition, plaintiff alleged that, "Said operator without warning started the street car with a sudden jerk of such violence that plaintiff was thrown across a twelve-inch ironbound step-up at the rear of the vestibule and into the aisle of said street car * * *"; and in paragraph 3 of her petition, she alleged that, "In putting said street car into motion in an unnecessarily violent manner, e. g., in starting same with such a sudden jerk, such conduct constituting a failure to exercise the high degree of care required of the defendant * * *." In view of these allegations, we think the contention that the issue was not authorized by pleading is altogether untenable.

In its 10th and last proposition, the defendant contends that the trial court erred in not sustaining its motion for a new trial, on the ground that the verdict awarding plaintiff $1,250 for her personal injuries was and is excessive. The record discloses that, plaintiff was injured on January 13, 1938; the nature, severity and result of which, are revealed by the following testimony which was not controverted; interrogated by her counsel, plaintiff answered: "Q. When you fell across that step, state whether or not you fell flat on your stomach, or on your left side or right side? A. I just fell sprawling.

"Q. Do you know where you hit? A. I hit on my stomach.

"Q. In the center, or on the left or right side? A. Just hit me right that way.

"Q. You are pointing to your right side? A. Yes, sir, and I hurts from there around.

"Q. From there around to the middle of your back? A. Yes, sir.

"Q. And that is where you hurt most? A. Yes, sir.

"Q. On the right side of your stomach? A. Yes, sir."

Plaintiff testified that, on reaching home, she was sick and vomited, suffered from pains in her back, side, leg and stomach; was in bed nearly a month, and was treated by Dr. Redlinger. At the trial, November, 1939, testified that she still suffered pains in her back and was able to do but little work. Plaintiff is a negro woman, fifty-four years of age at the time of her injury; a domestic in the home of Mr. J. A. Jones, cooking, washing, ironing, and keeping house; had worked for him and his mother for over seventeen years, and was earning from ten to twelve dollars per week; and was not able to return to work until the latter part of June (1938); and could do only light work because of the suffering it entailed, and earned only about two dollars per week. Mr. Jones, plaintiff's employer, testified that before her injuries, he paid her eight dollars per week and car fare; that his wife gave her clothes, and that, in addition she earned money on the side by working for his mother; that since her injuries, she had not been earning anything, but that he had been giving her an average of three dollars per week.

Dr. Redlinger testified that he called to see plaintiff the day after she was injured, and treated her for some time thereafter. She complained of pains in her back and side, and there was an irritation across the skin, indicating that she had received a blow to her side and back; that she passed blood in her urine during the first week, which indicated an injury to the kidney; that he gave her medicine to heal and disinfect the injury to her kidney and bladder; that at the time, he found a slight arthritic condition; that she remained in bed for some four weeks.

Dr. Nash testified that plaintiff first consulted him in March, 1939; that he made an X-ray examination and found a chronic arthritis, or rheumatism of the spine; that "The examination disclosed stiffness of her back and what I interpreted as severe pain every time she attempted to move it, on account of muscular rigidity.

"Q. Where was that pain in her back? A. In the small of the back; what you call the small of the back, or in the lumbar region."

Dr. Nash was asked a hypothetical question, without objection, embodying facts as follows: "Q. Dr. Nash, the testimony in this case shows that the plaintiff on January 13th, 1938 received an injury by either being thrown across or falling across a step-up on a street car approximately twelve inches in height; that she went to her home that night with assistance, under her own power—

"The Court: Let me stop you. Put in how she fell, please.

"Q. Mr. Hamlin: Thank you, Your Honor. The testimony is that she fell on this side, on the right side of her abdomen and suffered severe pain from the middle of her abdomen around to her back; that she went to bed and was confined for some three weeks and during the first few days passed blood from her kidneys and bladder; that she was attended by a physician who made some five or six calls and prescribed medicine to disinfect her bladder or stop the flow of that blood. Now, Doctor, would an injury of that nature be calculated, based on your knowledge and experience, to aggravate the arthritic condition which you found in this patient? A. Yes.

"Q. To what extent, Doctor? A. Well, to the extent of totally disabling her, I think, at the time I saw her; probably would be for a long time.

"Q. How long, in your opinion, would that disability continue? A. That is very hard to say. It is almost indefinite when one of those arthritic spines gets started up, and I don't know of any remedy that will cure them, and I don't know of anybody else that does." It was stipulated that plaintiff's life expectancy, at the time of her injury, was 18.09 years.

As it is not contended that the verdict of the jury was influenced by either passion, prejudice or any other improper motive, in view of the uncontroverted testimony heretofore set out, we are of opin-

ion that there was ample evidence to justify the jury in awarding the amount of damages found in favor of the plaintiff. The rule that controls in situations of this kind is stated in 13 T.J. p. 270, § 155, as follows: "The determination of the sum which will compensate a plaintiff for physical injuries involves a consideration of elements for which no mathematical standard of measurement exists, nor indeed any recognized standard except what an honest and impartial jury, uninfluenced by passion, prejudice or other improper motive, may deem adequate. The law merely declares that such damages shall be limited to just compensation, and that in a very large measure the amount must be left to the sound discretion and impartial judgment of the jury. A verdict is usually accepted as binding and conclusive upon the court, and especially upon the appellate court, even where in the opinion of the appellate court more was awarded than ought to have been allowed, unless it is manifest to that court that the jury were inflamed or influenced by passion, prejudice, sympathy, or some other improper motive in arriving at the verdict."

In harmony with the views herein expressed, appellee's motion for rehearing is granted, the former judgment of this Court is set aside, and judgment is now rendered overruling appellant's assignments and propositions, and affirming the judgment below.

BOND, C. J., dissents and adheres to the views expressed by him in the original opinion.

BOND, Chief Justice (dissenting).

In the original opinion, this Court deemed it advisable, in view of another trial, not to discuss in detail the testimony bearing on the issues involved. We reversed the case and remanded it for new trial, on the assignments that the court should have limited the recovery on aggravation of appellee's prior ailments, and a new trial should have been granted to meet the ends of justice. In view of the opinion of Justice LOONEY on motion of appellee for rehearing, which motion reveals nothing that was not fully reviewed by each member of this Court on original submission; and in the light of the reversed position of my Associates, it might be well here to again review the pleadings and testimony bearing on the assignment discussed in the original opinion:

As a direct and proximate result of defendant's alleged negligence in putting the street car in motion, in an unnecessarily violent manner, that is, "in starting same with such a sudden jerk," plaintiff alleged that she suffered injuries in all respects usually incident to personal injury damage suits, and further, "that a chronic arthritic condition of the lumbar region of her back was aggravated, in that, prior to such injury, such condition caused her no pain or incapacity, but that, immediately following the injuries aforesaid, such condition became acute and has caused her much pain and physical suffering and has incapacitated her to the extent hereinafter shown; that, but for the injuries detailed in the first paragraph hereunder (paragraph 4), such chronic arthritic condition would not have become acute or resulted in the incapacity hereinafter set out."

It will be seen that plaintiff seeks recovery for alleged injuries to her leg, back, muscles, ligaments, nerves, and internal organs, kidneys and bladder, as such injuries aggravated the prior condition of her back. The testimony is that all symptoms of injury, if any she suffered, except the subjective symptoms of injury to her back, had completely disappeared within three or four weeks. Dr. Redlinger testified:

"Q. Doctor, you treated her for some time after that, did you not? A. Yes, I made five or six calls at her home. * * *

"Q. Did you prescribe for her?—During that time? A. I prescribed medicine. * * *

"Q. I see, now during the first week that you treated her, Doctor, state what the nature of her urine was. A. The first week it contained a little bit of blood.

"Q. Doctor, would that indicate an internal injury of some character? A. No, —yes.

"Q. It would come from the organ of the kidney? You say that injury has healed, the injury that caused the blood to pass from the bladder has healed? A. Yes."

Dr. Nash testified: "Q. Did you examine her at that time, May 1, 1939? A. Yes.

"Q. What did your examination consist of? A. It consisted of an examination of her spine, the part complained of, and checking all of her reflexes and testing her sensations and ability to feel and

strength of the muscles, etc.; and an examination of her urine.

"Q. State whether or not any X-Ray was made at that time. A. Yes, I had Dr. Kohen to make X-Rays of her. * * *

"Q. Tell the court and jury, please Sir, what your examination disclosed. A. The examination disclosed stiffness of her back and what I interpreted as severe pain each time she attempted to move it, on account of muscle rigidity.

"Q. Where was that pain—in her back? A. In the small of her back; what you call the small of the back; or in the lumbar region * * *

"Q. What else, if anything, did that examination reveal? A. I don't remember of anything else. The X-Ray examination, of course, revealed—

"Q. I will get to that; what did it reveal? A. It showed a chronic arthritic rheumatism of the spine * * *

"Q. By chronic, you mean that it was a condition that had existed for some time? A. Yes. * * *

"Q. Does an arthritic condition in a patient's back always give them trouble. A. No, sir.

"Q. State whether or not the blow which your patient in this case described to you as having been received at the time of her injury was of a nature which would be calculated to aggravate the arthritic condition which the X-Ray reveals. A. It would, yes. * * *

"Q. How long, in your opinion, would that disability continue? A. That is very hard to say. It is almost indefinite when one of those arthritic spines gets started up, and I don't know of any remedy that will cure them, and I don't know of anybody else that does. * * *

"Q. You said you found some pain? Which side was that? A. She had pain on both sides of her back. Both muscles are rigid. * * *

"Q. It (a blow) didn't cause Ida May Hendricks' arthritis? A. I don't think it did, no."

Bearing on the issue, Dr. Nash further testified: "Q. A blow doesn't cause arthritis, does it? A. It may have.

"Q. It didn't cause Ida May Hendricks' arthritis? A. I don't think it did, no.

"Q. As a matter of fact, she had had that before January 13, 1938, in your opinion. A. I think she had, yes.

"Q. Can you tell how long? A. No, I cannot.

"Q. Can you look at that picture and give us an opinion as to how long it takes those little spurs to form out there? A. No, I don't think anybody can tell you that. Sometimes it takes years, and I have known cases that occur over a few months time. Just exactly how long, I don't think anybody can tell you. * * *

"Q. Aren't they pretty good size spurs? A. Yes, but not as bad as I have seen.

"Q. Those are what you might call fair size? A. I would hate to have them in my back.

"Q. Will you tell the jury whether or not they cause pain, those spurs? A. They will, yes.

"Q. Now, those spurs that are on there at the places you pointed out on the X-Ray—are those the only places where the calcium collects? A. Well, we might find it in all other parts of the body to a certain extent.

"Q. And that causes stiffness, doesn't it? A. If it is there, it usually does, yes. * * *"

The substance of Dr. Nash's testimony is, that the spurs (calcium formation about the joints of Ida May Hendricks) were large, causing stiffness and pain, and that there is no known cure for such arthritic condition; also, that such was her condition at the time she claimed to have been hurt. Then, if that be true, and the jury had a right to believe the testimony of Dr. Nash, Ida May Hendricks suffered pain and stiffness of her back and other parts of her body prior to the injury, and will continue to suffer pain and stiffness in the future as the result of arthritis, for which the defendant is in no way responsible. Certainly, the jury should have been instructed to exclude in their verdict all such pain and stiffness resulting from the arthritic condition. If Ida May Hendricks had an arthritic back, stiffened by calcium formations, and such was calculated to cause pain, as Dr. Nash's testimony reveals, then certainly the defendant should not be required to respond in damages for nature's ill effects. Ida May Hendricks was the only witness who could or did testify as to pain. All other claimed injury had cleared up. So, Ida May being an interested witness, the record presents an issue as to whether the pain was caused by her fall, or· was the natural effect of her ar-

thritic condition. She fell over the riser from the vestibule into the main body of the street car, onto a perfectly smooth floor. It is inconceivable that a strong, healthy woman, fifty-four years of age, accustomed to hard labor, as she alleged in her petition, would injure her back by falling on her stomach. We recognize that such issues are for the determination of a fact-finding agency, the court or jury; but, when the facts and circumstances preponderate against such findings, the law imposes upon the court the duty of granting a new trial, or even a second new trial, to meet the ends of justice.

It will serve no useful purpose to say more. A new trial should have been granted for reasons revealed in this Court's original opinion; I therefore respectfully dissent.