Texas & Pacific Railway Company et al. v. T. J. Goggin.

Decided December 5, 1903.

**1.—Evidence—Admissions—Abandoned Pleadings.**

Abandoned pleadings containing admissions against interest are admissible in evidence, and it is immaterial, upon the question of admissibility, that they are not signed or sworn to by the party sought to be bound.

**2.—Same—Practice on Appeal.**

Where evidence has been improperly excluded the rule on appeal is, that in order to hold that such error does not require a reversal of the judgment, it ought clearly to appear that no injury could have resulted therefrom.

Appeal from the District Court of Taylor. Tried below before Hon. J. H. Calhoun.

*Stanley, Spoonts & Thompson, J. H. Barwise, Jr.,* and *J. M. Wagstaff,* for appellants.

*Cunningham & Oliver* and *Legett & Kirby,* for appellee.

SPEER, Associate Justice.—Appellee sued appellants to recover for injuries to a shipment of cattle. In his original petition is contained this allegation: "That by reason of such negligence and rough switching by defendants, and by reason of the long delay caused by the negligence of the defendants' agents, said cattle were beaten, bruised, killed, crippled, gaunted and starved, and otherwise damaged to such an extent that 126 head were killed and died from the effects of such negligence, and the remaining 510 head that survived said negligent treatment were beaten, bruised gaunted, starved and crippled to such an extent that they were damaged $4 per head, and in the aggregate $2040. That the 126 head of cattle that were killed and died from the effects of the negligence aforesaid were nearly all cows with calf, and were reasonably worth on the market at Memphis, Texas, $25 per head, and in the aggregate $3150, making the total damage to said train load of cattle $5190."

By the first amended original petition it is alleged: "That by reason of said negligence and rough handling of said train of cattle by defendants and by reason of the long delays caused by the negligence of defendants, said cattle were beaten, bruised, crippled, gaunted, starved, many of them killed, and otherwise damaged to such an extent that 136 head were killed and died from the effects of such negligence, and the remaining 500 head that survived said negligent treatment were beaten, bruised, gaunted, starved and crippled and otherwise greatly damaged.

"That said train load of cattle in the condition in which they should and would have arrived at Memphis, Texas, by the exercise of proper care and prompt shipment on the part of defendants, would have sold on the market at Memphis, Texas, on the date of their arrival at $25

per head, and in the aggregate at $15,900. That in the damaged condition in which said cattle arrived at Memphis, Texas, the 136 head that were dead and died from said improper treatment were without value. That 75 head of the remaining 500 were so badly crippled and hurt by defendants as to only have a market value at Memphis, Texas, on date of their arrival of $8 per head, and the remaining 425 head were crippled, gaunted, drawn, skinned and otherwise injured by defendants so as to only have a market value of $15 per head on date of their arrival at Memphis, Texas, making a total damage to said cattle by said negligence of defendants in the sum of $8925."

By yet another amendment, being the pleading upon which plaintiff went to trial, the injuries and damages were thus pleaded: "That by reason of such negligent and rough handling of said train of cattle by defendants, and by reason of the long delays caused by the negligence of defendants, and by reason of the long delays without eating and without rest and the exposure to the cold, mud and rain as aforesaid, said cattle were beaten, bruised, crippled, gaunted, starved, exhausted, drawn, emaciated, many of them killed, and otherwise damaged to such an extent that 136 head were killed and died from the effects of such negligence, and the remaining 500 head that survived said negligent treatment were beaten, bruised, gaunted, starved, crippled, drawn, exhausted, emaciated and otherwise greatly damaged to such an extent that said train of cattle were damaged thereby in the aggregate $9525.

"That said train load of cattle were very high grade cattle, and in the condition in which they should and would have arrived in Memphis, Texas, by the exercise of ordinary and proper care and promptness on the part of defendants, would have sold on the market at Memphis, Texas, upon their arrival there at $25 per head, and four of said cattle, being high bred bulls, would have sold for $150 each, and in the aggregate at $16,500. That in the damaged condition in which said cattle arrived at Memphis, Texas, the 136 head that were dead, and died from said improper treatment, including said four bulls, were without value. That 75 head of the remaining 500 were so badly crippled, bruised and otherwise damaged and hurt by defendants as to have only a market value at Memphis, Texas, upon their arrival there, of $8 per head, and the remaining 425 head were crippled, gaunted, drawn, skinned, bruised and otherwise injured and damaged by defendants by said improper treatment so as to have only a market value of $15 per head on their arrival at Memphis, Texas, making a total damage to said cattle by said negligence of defendant in the sum of $9525."

Upon the trial the defendants offered in evidence the original petition, as well as the first amended original petition, "for the purpose of showing the condition of plaintiff's cattle and for the purpose of showing the number claimed to be killed and the causes which he alleges produced the damage and injury," and to the introduction of which the plaintiff objected, "for the reason that the same were immaterial, and were not signed or sworn to by the plaintiff," which objections were

sustained by the court and the evidence excluded. This was error. That abandoned pleadings containing material admissions against interest are admissible in evidence is no longer an open question in this State. And it is immaterial, upon the question of admissibility, that such pleadings are not signed or sworn to by the party sought to be bound. Barrett v. Featherstone, 89 Texas, 567; Houston E. & W. T. Ry. Co. v. De Walt, 96 Texas, 121, 70 S. W. Rep., 531, 5 Texas Ct. Rep., 1006; Felton v. Talley, 31 Texas Civ. App., 336 6 Texas Ct. Rep., 473; Prouty v. Musquiz, 94 Texas, 87, 59 S. W. Rep., 568; Southern Pac. Co. v. Wellington, 57 S. W. Rep., 856; Jordan v. Young, 56 S. W. Rep., 762; Galveston, H. & S. A. Ry. Co. v. Eckles, 54 S. W. Rep., 651. The relevancy of the proposed testimony fully appears from the above excerpts from the pleadings, and after a careful reading of the testimony we can not say the error was harmless.

*Reversed and remanded.*

### ON MOTION FOR REHEARING.

It is urged upon us that, if the matter upon which we have reversed the judgment in this case was error, nevertheless we should not reverse unless we were able to say that the error affected the result or prejudiced the appellant. But we do not so understand the rule. Our Supreme Court, in Missouri, K. & T. Ry. Co. v. Hannig, 91 Texas, 350, say: "The true rule is, that in such a case, in order to hold that the error does not require a reversal of the judgment, it ought clearly to appear that no injury could have resulted from the admission of the evidence."

We have heretofore followed the rule laid down in the Hannig case. Fort Worth Iron Works v. Stokes, infra p. 8 Texas Ct. Rep., 245.

*Motion overruled.*

Filed January 9, 1904.