LEAGUE et al. v. GALVESTON CITY CO. et al. (No. 7171.)

(Court of Civil Appeals of Texas. Galveston. Jan. 12, 1917. Rehearing Denied Feb. 1, 1917.)

1. CORPORATIONS ⊕⇒139 — OWNERSHIP OF STOCK—EVIDENCE—SUFFICIENCY.

In a suit by heirs and legatees to establish the ownership of a share of stock in defendant corporation, evidence *held* to sustain findings that the certificate in question was surrendered or disposed of by plaintiffs' ancestors and canceled by the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 467, 469.]

2. WITNESSES ⊕⇒205—PRIVILEGED COMMUNICATIONS.

Statements contained in a letter written by a client to his attorney, which were to be used as answers to interrogatories and evidence upon the trial of a case, were not privileged.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 754, 763.]

3. CORPORATIONS ⊕⇒139—TRANSFER OF STOCK—CIRCUMSTANTIAL EVIDENCE.

The defendant corporation was entitled to show by circumstantial evidence that the certificate of stock was not then owned by the plaintiffs without showing that it was then held and claimed by some one else, although there is no record of the transfer upon the books of the company.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 467, 469.]

Appeal from District Court, Galveston County; Clay S. Briggs, Judge.

Suit by Mary D. League and others against the Galveston City Company and others.

Judgment for defendants, and plaintiffs appeal. Affirmed.

Geo. E. Mann, of Galveston, and Ramsey, Black & Ramsey, of Austin, for appellants. Maco Stewart, Mart H. Royston, and Barret Gibson, all of Galveston, and Clarence Milheiser, of Houston, for appellees.

PLEASANTS, C. J. This suit was brought by appellants, who are heirs and legatees of Thomas F. McKinney and Samuel M. Williams, against the Galveston City Company and Maco Stewart, to establish the ownership of plaintiffs of a share of stock in said company issued to said McKinney and Williams, who at the time of the issuance of said stock were partners doing business under the firm name and style of McKinney & Williams.

The material issues presented by the appeal may be understood without any extended statement of the pleadings.

Plaintiffs allege: That M. B. Menard and Robert Triplett conveyed the league and labor of the east end of Galveston Island to Levi Jones, Thos. Green, and Wm. R. Johnson, with authority to issue 1,000 certificates, of which 400 were to be issued against a like number that had theretofore been issued to Levi Jones, and the remaining 600 were to be sold by the trustees, at not less than $1,500 each; the 600 certificates were apportioned two-thirds to Menard and those claiming under him, and one-third to Robert Triplett and those claiming under him. That the trustees executed 1,000 certificates divided into books designated A, B, C, D, and E, each containing 200 blank certificates. On August 21, 1838, "the partnership of McKinney & Williams, composed of Thos. F. McKinney and Samuel M. Williams, for a valuable consideration by them fully paid and surrendered to the trustees, and by them accepted and received, became the purchaser and original owner and proprietor of one of said joint-stock shares," and "in evidence of which two of said trustees" "issued and delivered to said Thomas F. McKinney for account of McKinney & Williams" one certificate No. 84 out of Book A. That in April, 1838, the holders of trustee certificates issued by said trustees met at Galveston, Tex., and there organized the unincorporated association or joint-stock company styled "Galveston City Company." That on February 5, 1841, by act of Congress of the Republic of Texas "the stockholders of the Galveston City Company" were incorporated. That said trustee certificates could be exchanged for certificates of stock in the unincorporated joint-stock company as well as for certificates of stock in the corporation thereafter formed, and that said trustee certificates or said certificates of said joint-stock company or said certificates of said corporation were in many instances used in the payment to the corporation for property or in payment of debts. That said trustees actually issued 1,000 certificates. That all of the said trustee certificates had been taken up by the company either in payment for property or debts or in exchange for certificates of the company, save and except 9, which 9 plaintiffs allege to be still outstanding, and among which plaintiffs allege is certificate A–84.

Plaintiffs allege: That the company has taken up 991 of the trustees' certificates. That the company, both incorporated and unincorporated, accepted in payment for property not only trustee certificates, but also the certificates of stock that had been issued by the company in exchange for surrendered trustee certificates, and that by that manner all of the certificates of the company had been canceled except 24. Plaintiffs allege: That 24 certificates issued by the company alleged to be outstanding and the 9 certificates issued by the trustees, alleged to be outstanding, making a total of 33 shares, constitute all of the stock of the company. That the company had always recognized the validity of said 9 trustee certificates as being valid stock in the company until the control of the company was acquired by defendant, Stewart, in July, 1909, when, for the first time, the company repudiated the rights of the alleged 9 outstanding trustee certificates.

Plaintiffs allege that the original certificate A–84 has been lost or destroyed, but that the books of the defendant company show same to be a valid outstanding share of stock therein. Plaintiffs allege they are entitled to the entire estate of Samuel P. Williams and Sarah P. Williams, and of Thos. F. McKinney.

The original petition was filed July 13, 1910. The prayer of the petition was for a discovery by the defendants setting forth all the contents of the books, records, and other papers in their possession relating in any way to the trustees' stock and to the 9 lost trustees' certificate shares, including the plaintiffs' share, and for a production on the trial by the defendants of all of said books, records, and papers which are referred to in detail in the petition. They further pray that they be adjudged and declared the owners of said share of stock, and that a renewal certificate be issued to them in the form used by the defendant company, and that they be decreed to share ratably and equally as the other renewal stockholders of the company have done in all earnings and accumulations of property of whatever nature by the company, and that they have judgment for the amount of the dividends due on their share, to wit, $32,500, and that a lien be fixed upon the property of the corporation to secure the payment of the said dividends. They further pray: That the transfer and alleged sale of the land to the

said Stewart, together with the deeds of conveyance, be set aside and canceled. That all of the proceedings whereby the said Stewart undertook to liquidate the affairs of the corporation be set aside, and that they have judgment against the said Stewart for such damages as may have been sustained by the corporation by reason of his conduct. They further pray that their right to a proportionate share of all the property and assets of the corporation then on hand be fixed and decreed by the judgment, and for general relief.

The answer of defendants denies that certificate No. 84 out of Book A was issued to Thomas F. McKinney for account of McKinney & Williams, and avers that if said share of stock was ever owned by McKinney & Williams they sold and transferred it during their lifetime, and it was surrendered to and canceled by the defendant company. They also pleaded statutes of limitation of two, four, and ten years.

The cause was submitted to a jury in the court below upon special issues, and in response to the questions submitted in the charge the jury found that the certificate in question was transferred or disposed of by McKinney & Williams, and that it was "surrendered or disposed of to or sunk in the Galveston City Company." Upon this verdict judgment was rendered in favor of the defendants.

[1] The undisputed evidence sustains the allegations of the petition as to the original ownership of the property which became the capital of the Galveston City Company, the issuance of certificates of shares in said property by trustees, the organization of the joint-stock company and of the present company. The evidence further shows that trustees' certificate No. A–84 was issued to Thomas F. McKinney for the firm of McKinney & Williams on August 21, 1838. Thos. F. McKinney died in 1876, and Samuel M. Williams in 1858. Plaintiffs are heirs and legatees of said McKinney & Williams. Williams was one of the members of the first board of directors of the company, and continuously served in that capacity. Shortly after its organization the board ordered that a stock ledger be opened, and directed all persons holding trustees' certificates to surrender them and take in lieu thereof certificates issued by the company.

On May 21, 1839, McKinney & Williams obtained from the Galveston City Company, unincorporated, a certificate numbered 1 for 62 shares. The form of this certificate is substantially as follows:

"Be it known that McKinney & Williams is entitled to 62 shares of the Galveston City Company stock on which $—— has been paid."

An account was opened in the stock ledger with McKinney & Williams, showing the account of McKinney & Williams, and showing that on that date they were recognized and regarded as stockholders to the extent of 62 shares, as evidenced by a new certificate held by them, numbered 1.

In the stock ledger there appears the stock account of McKinney & Williams. The first entry in this account is under date of May 20, 1839, and shows a stock credit of 62 shares. This account is credited with various shares of stock, and this account charged with various shares of stock, some surrendered by McKinney & Williams to the company, and others transferred to various persons. This account shows that on May 3, 1845, McKinney & Williams had a balance to their credit of 6 shares of stock, and shows, further, that on September 25, 1848, one-half of said 6 shares, to wit, 3 shares, were transferred to the Galveston City Company by Thos. F. McKinney, and that on the same day the balance of 3 shares was transferred from the account of McKinney & Williams, thereby closing such account. In closing this account it shows that these 3 shares (being one-half of said 6 shares) were carried to the credit of Samuel M. Williams on September 25, 1848. The stock account of Samuel M. Williams also appears in said stock ledger. This account shows that on May 12, 1846, Samuel M. Williams received to his credit 2 shares transferred to him by C. C. Givens. This account of Samuel M. Williams then shows under date of September 25, 1848, a credit of 3 shares, the entry thereunder reading as follows:

"McKinney & Williams balance a half interest in 6 shares. The other half being transferred by McKinney to the Galveston City Company."

McKinney signed a power of attorney on November 9, 1840, reciting that the firm of McKinney & Williams and Moseley Baker owned exactly 46 shares on that date, and it was proven that Baker then owned 44 shares, from which it appears that McKinney & Williams on that date owned only 2 shares. The stock ledger discloses that McKinney & Williams on said date did own exactly 2 shares, and shows these 2 disposed of. The statement of account rendered by Borden, agent, to McKinney & Williams also shows that said firm owned 2 shares and no more on said November 9, 1840. The 2 shares owned by said firm on November 9, 1840, are shown to have been subsequently surrendered to the company and canceled.

In 1858 McKinney wrote a letter to Judge William P. Ballinger, in which he states that he was a stockholder of the company until about eight years before the date of the letter, at which time he thought he transferred and disposed of all his interest to other parties.

The certificates issued by the trustees were transferable by indorsement, and no record of their transfer was required. J. P. Cole, who was agent and secretary of the company for a number of years, testified in a suit brought by Thos. J. Scott against the Galveston City Company to recover a share of

stock in said company, which suit was tried in 1874, that he had seen certificates A–84 among the exchanged and redeemed shares on file with the papers of the company. McKinney & Williams and also McKinney were indebted to the company in considerable amounts, and McKinney was in very straitened circumstances for many years before his death. No claim was ever made by either that they owned the share of stock in the company which plaintiffs now claim.

We think this evidence clearly sufficient to sustain the findings of the jury.

[2] The first assignment of error complains of the refusal of the court to sustain plaintiffs' objections to the introduction in evidence of a letter from Thomas F. McKinney to Judge William P. Ballinger written in 1858, on the ground that the letter was a confidential communication between attorney and client and made by reason of their relations as such and for the purpose of enabling the attorney to perform his professional duty in regard to the matter communicated, and was therefore privileged.

The bill of exceptions shows that on November 25, 1857, William P. Ballinger, who was attorney for defendants in a suit then pending in the United States Court at Galveston, styled Harvey Baldwin v. Galveston City Company et al., wrote Thomas F. McKinney, who was then at Austin, a letter which contains the following:

"I sent Baldwin's interrogs to you. You replied that you could not answer them. My dear sir, *you must answer them.* If you don't know or have forgotten, answer so far as you can recollect. You are obliged to answer. You endanger your interest not to do so. You are a defendant to said case, and you can't neglect it. I don't think whatever may be your answers that there is any chance of your losing anything, but still you are obliged to answer, and that under oath. So just sit down and give an hour as patiently as you can to looking many letters and to interrogs, and answer them as fully as you can. I will then draw up the answer in form and return it to you unless the other side waives its being sworn to. But you can't refuse to answer. If you don't remember say so to each interrogs, but state facts as far as you can remember."

Defendants offered this letter in evidence, and in connection therewith the following letter from Thomas F. McKinney to Judge Ballinger, which was written in 1858, and produced from the letter files of the firm of Ballinger & Jack, of which Judge Ballinger was a member at the time the letter was written:

"Dear Ballinger: I wrote you long since answering the interrogatories and giving you the facts which you cannot have received. I have known Baldwin, Holman and Borden for many years; don't recollect how long. I was not to my recollection a stockholder in 1850; the books of the company, however, will show the fact. I was a stockholder from the formation of the Galveston City Company until about eight years since when I think I transferred all my interest to other parties my interest varied as to quantity as I was frequently procuring and disposing of stock. I was director, but do not recollect date. The books of the company will better tell the

facts. It is no use to talk to me about dates; Gail Borden, Jr., was agent for a long time, and Dr. Levi Jones preceded him. I cannot pretend to give dates, and I cannot now say that I recollect the location of a single lot in Galveston without aid of maps. I had conversation with Baldwin some years since about his ownership of lots in Galveston, but do not recollect the date or number of lots, nor can I say how often Baldwin bored me on the subject, nor can I now recollect all or much of the conversation had with Baldwin. Neither Williams nor myself have any interest in the judgment against Holman; it belongs to Mrs. Toby. Tom and Riley receipted to Mrs. Toby for Holman note, and how the judgment was ever rendered in our name I cannot tell. I acted as Mrs. Toby's agent and remitted to her all I received. I know nothing about Holman having lots in Galveston. Edmonds, who is always hunting up something, came to me and asked me if I could give him one-half of the proceeds of any property of Holman's which he could find and made subject to the judgment. I told him I would. He procured the execution from Houston, pointed out the property, and had it sold and bought in. I transferred what he said was his and the whole of the property passed out of my hands; he, Edwards, swindling me as I afterwards learned, or rather Mrs. Toby, for whose benefit the transaction was made.

"Yours truly,        Thos. F. McKinney."

All of the records of the case of Baldwin v. Galveston City Company, except the court docket, which only gives the style of the case, as before set out, have been destroyed. Nothing is shown as to the nature of the suit or the parties thereto in addition to the docket entry and the statements in these letters.

We think it clear that the statements in the letter of McKinney were in response to interrogatories which had been sent to him by Judge Ballinger and were intended to be used as evidence on the trial of the case. Judge Ballinger advises McKinney in his letter inclosing the interrogatories to write him a letter giving as accurate answers as he could to the interrogatories, and he would then draw up the answers in form and return it to him (evidently for his signature and affidavit), unless the opposing parties waived its being sworn to. It is, we think, apparent from McKinney's letter that it was written to answer the questions propounded, which had been answered in previous letters that Judge Ballinger had not received, and that such answers were to be used in evidence upon the trial of the case. It being intended that the statements contained in the letter should be used as evidence in the case, such statements were not privileged. Henderson v. Terry, 62 Tex. 282; Railway Co. v. Brooking, 51 S. W. 537.

The several assignments of error which assail the judgment on the ground that there was no evidence sufficient to authorize the submission to the jury of the issues submitted by the charge, and that the verdict of the jury is without evidence to sustain it, are disposed of by our fact conclusions before set out, and will not be discussed.

[3] The contention that appellees are not entitled to show by circumstantial evidence

that the certificate in question is not now owned by appellants, without showing that it is now held and claimed by some one else, there being no record of the transfer upon the books of the company, cannot be sustained. This contention was fully discussed in the opinion of this court in the case of Condit v. Galveston City Co., 186 S. W. 402, which was a companion case to this, and was overruled. We do not wish to add to what was said in the case cited upon this subject.

The cross-assignment of error presented in appellees' brief is without merit, and is overruled without discussion.

All of the assignments presented in appellants' brief have been considered, and none of them, in our opinion, should be sustained. It follows that the judgment of the court below should be affirmed, and it has been so ordered.

Affirmed.