**CAMPBELL et al. v. McLAUGHLIN et al.***
(No. 576–4395.)

(Commission of Appeals of Texas, Section B.
Feb. 10, 1926.)

1. **Judgment ⬳712—Judgment for defendants as interveners in former case not involving plaintiffs admissible as muniment of title.**

In trespass to try title, judgment in former case in favor of defendants as interveners therein, awarding them recovery of lands in question, *held* admissible as a muniment of title, although the present plaintiffs were not parties nor privies to any party to former suit.

2. **Evidence ⬳207(1)—Special findings in former suit, resulting in judgment in favor of defendants, admissible as admissions against interest.**

In trespass to try title, special findings in former suit, bearing on adverse possession of former owner, *held* admissible as admission against interest by defendants, who were parties to former suit and recovered judgment.

3. **Evidence ⬳208(6) — Abandoned pleadings are admissible as admissions against interest.**

Abandoned pleadings, containing material admissions against interest, are admissible in evidence whether signed or sworn to by party sought to be bound or not.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Trespass to try title by S. Campbell and others against R. E. McLaughlin and others. Judgment for defendants was affirmed by the Court of Civil Appeals (270 S. W. 257), and plaintiffs bring error. Reversed and remanded for new trial.

K. C. Barkley, W. S. Parker, and W. Owen Dailey, all of Houston, for plaintiffs in error.

Smith, Crawford & Sonfield and Oswald S. Parker, all of Beaumont, for defendants in error.

SPEER, J. Plaintiffs in error instituted this suit against defendants in error in the usual form of trespass to try title to recover 600 acres of land in Hardin county. The land was embraced in the Smith and Davidson grants and also in the David Choate grant, the Choate being junior to the Smith and Davidson, and there being a conflict involving the Choate. On June 3, 1873, all the title of David Choate to the land in controversy was sold under execution, and the plaintiffs in error are the owners of that title. The defendants in error claimed the land under David Choate and his wife, Mary Choate, as common source "and otherwise." In the trial court plaintiffs in error pleaded special limitations in favor of David Choate, on the theory that he had perfected a limitation title against the Smith and Davidson title prior to the execution of the sheriff's deeds to Mc-Clenny and Daniels in 1873, through which

deeds they claim. The defendants in error sought to show that the Smith and Davidson titles were superior outstanding titles against the title asserted by plaintiffs in error, and that they had themselves connected with those titles. They also interposed other defenses not necessary to mention. On the trial the plaintiffs offered evidence to show, and the Court of Civil Appeals so found, that they owned whatever interest David Choate owned in the David Choate at the time of the execution of the sheriff's deeds in 1873.

The court submitted the issue whether or not David and Mary Choate or either of them had possession of the land in controversy under either the three or five years' statutes of limitation for either the three or five years prior to June 3, 1873 (the date of the execution sale), and the jury answered, "No." Other issues were submitted and answered, and upon the whole the court rendered judgment for the defendants. Upon appeal the Court of Civil Appeals affirmed that judgment. 270 S. W. 257. In the view we take of the case, it is only necessary to decide two questions, both of which involve rulings of the trial court in admitting and rejecting evidence.

[1] It is contended, first, the court erred in admitting in evidence when offered by the defendants in error that part of a judgment in cause No. 1796, wherein Houston Oil Company of Texas was plaintiff and Polly Choate et al. were defendants, rendered in March, 1916, whereby it was adjudged that the interveners in that case (being the present defendants in error) should recover the lands there and here involved. Plaintiffs in error were in no wise parties and are in no wise privies to any party to that judgment, and for this and numerous other supposed reasons they insist the judgment was not admissible against them, but none of their objections is well taken. The judgment was admissible as a muniment of title precisely as though the Houston Oil Company of Texas had executed a conveyance to the interveners in that case. It does not derive any force as evidence upon the principle of estoppel by judgment, but rather upon the principle that whatever title was owned at the time by Houston Oil Company of Texas was by the judgment devested out of that company and vested in the interveners. This was the legal consequence of the judgment, and to this extent was binding upon the world as a muniment of title. The rule in cases of common-law ejectment and other special statutory proceedings with respect to the effect of a recovery has little or nothing to do with the question of the effect of a recovery in Texas under our statutory trespass to try title proceedings. The rule is too well settled in Texas, as shown by the Court of Civil Appeals in this case, to require further elaboration. But giving to the judgment the effect here indicated could not

---

operate to foreclose the issue of superior title or to affect it at all.

[2] The Court of Civil Appeals, however, appears to have assumed that the Smith and Davidson titles, at the time of the judgment of 1916 referred to, were superior to the title of the Choates, and this would be true if it were fairly determined that David Choate had not himself acquired the Smith and Davidson titles through limitations prior to the execution sale under which plaintiffs in error claim. That issue was submitted in the present case, and properly so, because, of course, whatever the original superiority of the Smith and Davidson titles, if David Choate had acquired them by any means prior to the execution sale, the plaintiffs in error would in any event be entitled to recover. It is with respect to this feature of the case an error has been committed. Upon the introduction in evidence of the decreeing part of the judgment referred to, the plaintiffs then offered to introduce the special findings constituting the verdict in the Houston Oil Company v. Polly Choate Case. These findings were as follows:

"Question No. 1: Is the east boundary line of the David Choate one-fourth league located, beginning at the corner lately marked by a concrete object now destroyed and as surveyed by P. G. O'Mahundro? Answer yes or no."

"Yes."

"If you answer 'Yes' to this, you need not answer question No. 2.

"Question No. 3: Did David Choate have under fence using, cultivating and enjoying the same in peaceable and adverse possession under title or color of title a portion of the land in conflict between the David Choate survey and the Uriah Davidson survey on or near the west boundary of said Choate survey continuously for a period of three full years prior to the 28th day of January, 1861? Answer yes or no."

"Yes."

"Question No. 4: Did Mrs. Mary or Polly Choate through the negro, Beauregard, as a tenant, occupy, use and enjoy in peaceable and adverse possession under title or color of title any part of the land in conflict between the David Choate and the Uriah Davidson surveys for a continuous period of three full years before the institution of this suit? Answer yes or no."

"Yes."

"Question No. 5: Did Mrs. Mary or Polly Choate, through T. R. Pickle as a tenant, occupy, use, and enjoy in peaceable and adverse possession any part of the land in conflict between said Choate and Davidson surveys for a continuous period of three full years before the institution of this suit? Answer yes or no."

"Yes."

"Question No. 6: Did David Choate, by his deed to C. W. Winn, dated the 13th day of May, 1871, in agreement with said Winn, convey the land described in said deed for the purpose of said Winn's later conveying it to Mary or Polly Choate as, and to be her separate and individual property? Answer yes or no."

"Yes."

"Question No. 7: Did said Winn later, by the deed of 28th day of July, 1871, in pursuance of an agreement between himself and David Choate made at the time of making the deed from Choate to Winn, convey the land described therein to Mrs. Mary or Polly Choate as and to become her separate and individual property? Answer yes or no."

"Yes."

"Question No. 8: Was any part of the land in conflict between the David Choate survey and the A. W. Smith survey used, occupied, and enjoyed under peaceable and adverse possession by David Choate or those holding under him, under title or color of title through Foss Jones as a tenant, for a continuous period of three full years before the institution of this suit? Answer yes or no."

"Yes."

"Question No. 9: Did Mrs. Mary or Polly Choate, through Foss Jones as tenant, occupy, use, and enjoy in peaceable and adverse possession under title or color of title any part of the land in conflict between said David Choate and said Smith surveys for a continuous period of three full years before the institution of this suit? Answer yes or no."

"Yes."

"Question No. 10: Did Mrs. Mary or Polly Choate, through John W. Davis as agent or tenant, use, occupy or enjoy in peaceable and adverse possession, under title or color of title, any part of the land in conflict between said David Choate and in the Smith surveys for a continuous period of three years before the institution of this suit? Answer yes or no."

"Yes."

"Question No. 11: Did Mrs. Mary or Polly Choate or those holding under her cultivate and enjoy in peaceable and adverse possession any part of the land in conflict between the David Choate and the A. W. Smith surveys for a continuous period of ten full years before the institution of this suit? Answer yes or no."

"Yes."

"Question No. 12: Did David Choate or those holding under him use, cultivate or enjoy a part of the land in conflict between the Choate and Davidson surveys, holding the same in peaceable and adverse possession for a continuous period of ten full years before the bringing of this suit? Answer yes or no."

"Yes."

"In answering the above question No. 12, you are instructed that the statutes of limitation were suspended and not in operation from the 28th day of January, 1861, to the 30th day of March, 1870, and in finding the time of use and possession about which is inquired in above question No. 12 you will deduct the time between January 28, 1861, and March 30, 1870.

"You are instructed that by the term 'adverse possession,' as used in the questions above propounded to you, is meant an actual and visible appropriation of the land, commenced and continued under a claim of right, inconsistent with and hostile to the claim of another. By the term 'peaceable possession,' as used in the questions above propounded to you, is meant: Such possession as is continuous and not interrupted by adverse suits to recover the estate.

"L. B. Hightower, Judge Presiding.

"We, the jury, answer the questions as shown hereinabove.     W. H. Knupple."

This evidence was excluded upon the objections of the defendants. The exclusion was error. The bill of exceptions does not disclose what objections were urged and sustained, but we do not decide the question upon that point, since, in our opinion, the evidence was clearly admissible as against any objection that could have been urged. The testimony thus offered and excluded was in the nature of an admission by defendants in error against their interest. upon a most material question of fact in this case. We have seen that the issue of whether or not David Choate had acquired the Smith and Davidson title by limitation prior to the execution sale against him was a material issue and was actually submitted upon the trial, so that either party was entitled to offer upon that issue any evidence fairly tending to support his or their contention. We have no doubt that at least some of the findings of the jury in the Houston Oil Company v. Polly Choate Case thus offered were admissible in this case, as in the nature of an admission by defendants in error to the effect that the Choate title in June, 1873, was in truth superior to the Smith and Davidson titles by reason of the facts therein found. Such verdict is not to be admitted upon any principle of estoppel or res adjudicata, for of course a judgment has no binding force upon persons who are not parties or privies as to any fact upon which such adjudication was made. Such testimony is admissible as an ordinary admission of a party against interest, and it can make no difference what the precise form of the admission may assume. Any act, whether by oral statement, written pleadings, or conduct, whatsoever, by a person or by one authorized to speak or act for him, which fairly may be interpreted as an admission against interest upon a material matter of court inquiry, may be shown in evidence. The general rule, supported by decisions throughout the country, is thus stated in 34 C. J. p. 317, § 353:

"Where a party on the trial of an action advances contentions which are inconsistent with his prior conduct in relation to the matter in controversy, such prior conduct may be shown as being in the nature of an admission. Evidence of this character takes a wide range and may be received. For example, where the matter in controversy is the ownership of property, the existence of a relevant mental state * * * intent, motive * * * or the existence of such matters as claim, disclaimer" and the like.

Wharton on Evidence (3d Ed.) § 758, declares:

"It is true that, strictly, we are not entitled to speak of the judgment of a court as the admission of a party. But when a party asks the judgment of a court and to obtain such judgment makes a particular statement, and the judgment is based on such statement, then the court may be viewed as the agent of the party making the statement, and the judgment of the court may be imputed to the party as an admission."

Herman on Estoppel, vol. 1, p. 335, says:

"A record may also be admitted in evidence in favor of a stranger against one of the parties as containing a solemn admission or judicial declaration by such party in regard to a certain fact. But in that case it is admitted, not as a judgment conclusively establishing the fact, but as the deliberate declaration or admission of the party himself that the fact was so. It is therefore to be treated in accordance with the principles governing admissions, to which class of evidence it properly belongs."

[3] The author then illustrates by cases the application of the rule. The rule is well settled in Texas that abandoned pleadings containing material admissions against interest are admissible in evidence, and such admissibility does not depend upon their being signed or sworn to by the party sought to be bound. Barrett v. Featherstone, 35 S. W. 11, 36 S. W. 245, 89 Tex. 567; Houston, etc., Co. v. De Walt, 70 S. W. 531, 96 Tex. 121, 97 Am. St. Rep. 877; Texas, etc., Co. v. Goggin, 77 S. W. 1053, 33 Tex. Civ. App. 667. There is no reason for holding that statements or conduct of a party in the progress of a trial, to have evidentiary force as an admission of fact, must necessarily be confined to the pleadings in the case. Indeed, the principle has been applied to the request for instructions and the assignments of error when such instruments fairly embody an admission of fact. Floyd v. Kulp Co., 71 A. 13, 222 Pa. 257. In that case the Supreme Court of Pennsylvania said:

"These [the pleadings, the requests for instructions, and the assignments of error] were offered as extrajudicial admissions on the part of the Millikens that the land they were claiming was in fact seated land in 1838. It may be that the requests for instructions and assignments of error show more or less of an inconsistency between the positions taken by the defendants in that case and those taken by the defendant in this. If there is anything in them which can properly be construed as an admission by the Millikens, either express or implied, of the fact here asserted by the plaintiffs—that the land was seated in 1838—they were certainly admissible in evidence. Touching this matter, it is quite enough for us to say that in our opinion this test was met. True, it may be, and doubtless is, that these requests and assignments were drawn by counsel; but in such case the law makes no distinction. 'The concessions of attorneys of record bind their clients in all matters relating to the trial and progress of the cause. * * *' That the pleadings in prior causes must be treated as the parties, 'admissions, usable as evidence in later cases, must be conceded,' Wigmore on Evidence, § 1066.

"Nor does the fact that the action in which these papers were used was brought by other parties than the plaintiff here, without privity between them, make them inadmissible. Between the defendants in that suit and the de-

fendant in this there is unquestionable privity of title, and this is quite sufficient.

"* * * If in the course of the trial the Millikens asserted, either in requests for instructions or in their assignments of error, that the land was seated in 1838, or any fact which would warrant such inference, it was entirely competent to prove the fact as an admission binding on the present defendant. If they introduced the evidence of witnesses to the same end, it was entirely competent to show this fact also, for like reason. But whether they *did one or the other, or both, were questions* of fact for the jury in the present case to pass upon. The court could assume nothing with respect to them. And even though the admissions were established, still their effect would be for the jury."

So that the issue of limitations in favor of Choate prior to June, 1873, being a material one, upon which the case might turn, the exclusion of any legitimate evidence showing or tending to show an admission of one of the parties, for their privies, against interest with respect to such issue, is harmful, and must result in a reversal of the judgment. In view of the reversal, it is not necessary for us to pass upon other questions presented in the application, since they will probably not arise on another trial.

We recommend that the judgment of both courts be reversed and the cause remanded to the trial court for another trial.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.