WISE et al. v. HAYNES et al.

No. 5019.

Court of Civil Appeals of Texas.
Texarkana.

March 18, 1937.

Rehearing Denied April 1, 1937.

478

Lee, Porter & Latham, of Longview, Edwin M. Fulton, of Gilmer, and Wm. Hodges, of Texarkana, for appellants.

Wynne & Wynne, Campbell & Leak, James V. Leak, and Wm. A. Wade, all of Longview, and J. W. Timmins, of Dallas, for appellees.

JOHNSON, Chief Justice.

This suit was filed by appellants, Peter E. Wise and Martha Wise French, against J. M. Haynes and wife, Lucy Haynes, and Marcus P. Haynes and wife, Mary Haynes, in trespass to try title to 202 acres of land in Gregg County, Texas. A second amended original petition was filed in which J. T. Eggleston joined as a party plaintiff and Lem L. Allen, E. B. McKean, Thomas Dix, E. V. Woolsey, and the Sun Oil Company were added as defendants. It is not thought necessary to describe the several pleadings of the defendants, further than to state that the defendant J. M. Haynes disclaimed any interest in the land and alleged that it is now owned, the west one-half by his wife, Lucy Haynes, and the east one-half by his son, Marcus P. Haynes. The case was tried before a jury. At the conclusion of plaintiffs' evidence plaintiffs took a nonsuit as to the defendant Sun Oil Company and that defendant was dismissed from the case. The remaining defendants then filed motions for instructed verdict in their favor. The motions were granted, and upon return of the verdict judgment was entered in favor of the defendants and that plaintiffs take nothing by reason of their suit. Plaintiffs have appealed.

Appellants assign as error the action of the trial court in directing a verdict in favor of defendants; and in excluding a certain affidavit executed by defendant J. M. Haynes, offered in evidence by appellants against Marcus P. Haynes; and in sustaining appellees' objections to certain testimony offered in evidence by appellants.

Appellants contend that the facts introduced in evidence and against which no objection was sustained were sufficient to go to the jury on the two issues upon which their suit is based, namely: (1) that appellants, Peter Wise and Martha Wise French, were the children of Mary Jane Wise who became the second wife of appellee J. M. Haynes; (2) that the land in question, which was purchased by J. M. Haynes after the death of his second wife and during his third marriage, was paid for with property and proceeds of the sale of property belonging to the community estate of J. M. Haynes and his second wife, Mary Jane Wise.

We do not think that it would serve any useful purpose to lengthen this opinion with a detailed statement of the testimony of the several witnesses establishing the first issue, which testimony we find is amply sufficient in showing that appellants, Peter Wise and Martha Wise French, are children of Mary Jane Wise, who became the second wife of J. M. Haynes.

Bearing upon the second issue above mentioned, we will state some of the facts admitted in evidence, as well as certain other facts, distinguishing them, offered in evidence by appellants and which we think the trial court erred in rejecting. The facts so excluded, when taken together with the facts admitted in evidence, meet the requirements of law in character of evidence, clear, certain, and convincing, as against appellee, Marcus P. Haynes, to impress the property in controversy with a trust protecting the interest of appellants, Peter Wise and Martha Wise French, as children of Mary Jane Wise Haynes, deceased.

J. M. Haynes is now living with his third wife, Lucy Haynes. His first wife, Minnie O'Rear, died in 1872. In 1876 he married Mary Jane Wise in Lee county, Miss. J. M. Haynes and his wife, Mary Jane, moved to Morris county, Tex., in 1898, and purchased a farm near Daingerfield, and executed notes for the purchase price. They later paid the notes from their earnings on this farm. In 1910 they sold the Morris county farm and moved to Longview, Gregg county, Tex. Mary Jane died in March, 1911. Appellee Marcus P. Haynes is the only surviving child born of the marriage of J. M. Haynes and his second wife, Mary Jane Wise. It appears that appellants, Peter Wise and Martha

Wise French, and appellee Marcus P. Haynes are the sole heirs of Mary Jane Wise Haynes, second wife of J. M. Haynes. In 1912 J. M. Haynes purchased some lots in the Northcutt Heights addition to the city of Longview and built two houses on them. He later married Mrs. Lucy McFarland, his present wife. June 22, 1917, he purchased the 202 acres of land now in controversy from J. R. Bozman. The conveyance was made to J. M. Haynes and wife, Lucy Haynes. The deed recites a consideration of $6,000, of which $1,000 was paid in cash, $3,000 in trade, and two notes for $1,000 each, due October 15, 1917, and October 15, 1920. That part of the consideration mentioned as $3,000 in trade was a conveyance by J. M. Haynes of the Northcutt Heights property above mentioned. The deed from Bozman recites that Lucy Haynes furnished $800 of the purchase money. Subsequently, March 1, 1919, Lucy Haynes executed and acknowledged an instrument reciting that she had been repaid the $800 which she had furnished on the purchase price of the 202 acres of land and that she thereby released and quitclaimed any lien on or interest in the land.

By deed dated March 10, 1931, recorded the following day, J. M. Haynes and wife, Lucy Haynes, conveyed to Marcus P. Haynes the east one-half of the 202-acre tract of land, by reason of certain facts recited in the deed as follows:

"That J. M. Haynes, and wife, Lucy Haynes, of the County of Gregg, State of Texas, for the following consideration, paid by M. P. Haynes, as follows:

"For and in consideration of M. P. Haynes accepting the land herein conveyed as being in full and final satisfaction of his claim or claims against J. M. Haynes and wife, Lucy Haynes, or either of them, to any and all interest that he may be entitled to claim in any of the land and premises now being in the name of J. M. Haynes and wife, Lucy Haynes, in Gregg County, Texas, that he have *have* by reason of his being a son of the second wife of J. M. Haynes, and his mother being Mary J. Haynes, and this land herein conveyed is to be in full and final satisfaction of all community property claims or separate estate claimed by him and wife, Mary Haynes, by reason of any right, title, or interest which he inherited from his deceased mother, Mary J. Haynes, and in and to the property, whether real or personal of

J. M. Haynes, by reason of his claim as an heir of his mother, have Granted, Sold, and Conveyed, and by these presents, do Grant, Sell, and Convey unto the said M. P. Haynes, of the County of Gregg, State of Texas, all that certain East one-half of the tract or parcel of land situated in Gregg County, Texas, it being 202 acres, a part of the G. A. Thompson Survey, located about 2 miles E. of the town of Gladewater, and described by metes and bounds as follows:"

On the same date, March 10, 1931, J. M. Haynes and his wife, Lucy Haynes, and Marcus P. Haynes and his wife, Mary Haynes, executed a deed conveying the west one-half of the 202 acres of land to Edwin Lacy, reciting a consideration "of $1.00 and other considerations." And on the same day Edwin Lacy reconveyed the property to Lucy Haynes by deed, reciting: "For and in consideration of the valuable consideration to me in hand paid by Lucy Haynes from her separate estate, and to her separate use and benefit. * * *"

On March 17, 1931, Marcus P. Haynes and his father, J. M. Haynes, went to the office of Ramey, Calhoun, Marsh & Higgins, attorneys at law of Tyler, Tex., who were preparing to file a suit in the federal court at Tyler for Marcus P. Haynes and one Robert Osborne (purchaser of a mineral interest from Marcus P. Haynes). The suit was against the Sun Oil Company. While there J. M. Haynes made a full statement of the facts concerning his acquisition of the 202 acres of land, showing that it was paid for with community funds of himself and his second wife, Mary Jane. The statement was made in the presence of Marcus P. Haynes and in response to questioning by his attorney, Mr. Tom Ramey, who was then preparing the case to be filed against the Sun Oil Company. The statement was signed and sworn to by J. M. Haynes before Lois Wells Orr, a notary public. Lois Wells Orr was stenographer for Mr. Ramey. The affidavit reads as follows:

"The State of Texas
"County of Smith

"Before me, the undersigned authority, on this day personally appeared J. M. Haynes, who, being by me first duly sworn, deposes and says:

"That affiant has been married three times, my first wife was Orear Haynes, to whom I married in the year 1872. The

said Orear Haynes died intestate in the year 1873. There was born of this marriage one and only one child, Emma Haynes, who is now the wife of John R. Stephens, and who now resides in Daingerfield, Texas.

"I was married the second time in the year 1877 to Mary Jane Wise. My said second wife, Mary Jane Haynes, died intestate in in the year 1910. There were born of my said second marriage two and only two children, one of whom died in infancy, and the other, my son, Marcus P. Haynes, who now resides in Gregg County, Texas.

"My said second wife, Mary Jane Wise, was married twice, and only twice, she having been married prior to her marriage to me to Jim Wise.

"I was married the third time in the year 1912 to Lucy McFarland, who is now living, and who is my present wife.

"In the summer of 1909, I moved from Morris County, Texas, where I had been living, to Longview, Texas. At the time I moved to Longview, Texas, I sold my land in Morris County, Texas, consisting of about two hundred acres situated about 1½ miles Northeast from Daingerfield, known as the Cook Tract. J. T. Covey bought this land and paid me nearly Nine Thousand and No/100 ($9,000.00) Dollars for it, all of which was paid within a year's time after I sold the land.

"The above 200 acre tract of land is a part of the Lavina Winters Survey, and is the same land which was conveyed to me by Robert Hollingsworth and wife, and J. M. Moore and wife by deed dated January 1st, 1899, which is recorded in Book J, page 580, Deed Records, Morris County, Texas.

"I gave four notes in the sum of $300.00 each in payment of said land, and all of said notes were paid off by me on or before the 25th day of January, 1909, upon which date I secured a release of said notes from the said Robert Hollingsworth, et al, said release being recorded in Volume Q, page 138, Deed Records, Morris County, Texas. The money which I paid for said land was earned and acquired during the marriage of my second wife and myself. When I bought said land in Morris County, it was in the woods, and we cleared up 150 acres of it and built houses and fences, and other improvements thereon, all of which was done and paid

for out of money earned by and belonging to my said second wife and myself.

"I used a part of the money which I obtained from the sale of the Morris County lands, and bought five lots in the Northcutt Addition to Longview, Texas, shortly before the death of my second wife, Mary Jane Haynes. About a month after her death, which was on March 5,. 1910, I built two houses on said lots. Said lots and the houses I built cost me about $3000.-00. Said money which I paid for said property was a part of the money I had received from the sale of my Morris County lands.

"The rest of the money which I got from the sale of my Morris County lands and the crops thereon, I invested in one way or another, and used a portion of it for living expenses. I will estimate that I continued to keep between four and five thousand dollars of said funds invested in the form of land notes and otherwise, until I bought a farm containing 202 acres in the G. A. Thompson Survey, Gregg County, Texas, from J. R. Boazman, and wife, on June 22nd, 1917. About two or three years before I bought that farm, I placed on deposit in the First National Bank of Longview, Texas, about $4000.00 of the money which I had gotten from my Morris County lands, and kept it in a savings account in said Bank, for which I received four per cent interest per annum.

"When I bought the above tract from Boazman and wife on June 22nd, 1917, I paid in consideration therefor $1000.00 in cash, which was a part of the money which I had received from the sale of my Morris County lands, and deeded to Boazman in further consideration of said conveyance, my lots and property in the Northcutt Addition to Longview, which I valued at $3000.00, and I also gave Boazman two promissory notes for $1000.00 each. I later paid off both of said $1000.00 notes to Boazman in the Fall of the same year I bought the property, and the money which I used in paying off said notes was some of the money which I had in a savings account in the First National Bank of Longview, which was also a part of the money which I had originally obtained from the sale of the Morris County lands.

"My wife, Lucy Haynes, advanced $800.-00 in part payment of the cash consideration for the above described Boazman tract; but I reimbursed my said wife, Lucy Haynes, said $800.00, which $800.-

00 I got from being repaid $500.00, which my son, Marcus Haynes, owed me, and which I had loaned him out of the money I received from the Morris County lands. The rest of the $800.00 which I reimbursed my said wife was in the form of some liberty bonds which I had purchased previously out of some of the money obtained from the sale of the Morris County lands.

"I always have recognized that my son, Marcus Haynes, has been the owner of a one-half interest in and to the above described 202 acre tract, which I bought from Boazman, because the money which I paid for said land was out of the funds which belonged to the community estate of my said second wife, Mary Jane Haynes and myself, and I have always recognized and believed that my said son, Marcus Haynes, being the only living child of my said second wife, has inherited her half interest in said property, and was, and is, therefore, entitled to one-half of the same.

"J. M. Haynes.

"Subscribed and sworn to before me, this 17th day of March, A. D. 1931.
"[Seal]   Lois Wells Orr, Notary Public,
                    Smith County, Texas."

The facts so stated and sworn to by J. M. Haynes, in the above-mentioned affidavit, were by the attorneys mentioned incorporated in the petition as the facts upon which the suit of Marcus P. Haynes and Robert Osborne was shortly thereafter filed against the Sun Oil Company. The Sun Oil Company had acquired an oil and gas lease covering the entire 202 acres of land, executed by J. M. Haynes and wife, Lucy Haynes, prior to their execution of the above-mentioned deed of March 10, 1931, to Marcus P. Haynes. It appears that an agreed judgment was entered in the federal court whereby Marcus P. Haynes and Robert Osborne recovered $30,000 from the Sun Oil Company.

The same attorneys incorporated the same facts in a petition as the basis of a suit filed in the district court of Gregg county by Marcus P. Haynes and Robert Osborne against W. W. Bradley and others, who claimed royalty interest by virtue of a deed from J. M. Haynes and wife, Lucy, to W. W. Bradley, dated April 2, 1931, covering the entire 202 acres. It appears that an agreed judgment was also entered in that case, awarding recovery to Marcus P. Haynes of a portion of the royalty originally conveyed to Bradley, as to the east one-half of the 202 acres.

On objection of appellees, the above-quoted affidavit of J. M. Haynes and the depositions of Tom Ramey and Lois Wells Orr identifying the affidavit and showing the presence of Marcus P. Haynes at the time it was made, and the purposes for which it was procured by Marcus P. Haynes and his attorney, as being in the preparation of the suit against the Sun Oil Company, were excluded by the trial court. To this action of the trial court appellants duly excepted. Appellants also called, as an adverse party, Marcus P. Haynes to testify, and offered to show by his testimony the following facts, developed in the absence of the jury, in substance: That Marcus P. Haynes was present when the statement was made by his father; that it was made in preparation of the suit subsequently filed by witness and Osborne against Sun Oil Company; that upon examination of the instrument witness identified the signature of his father; and that the instrument contained the matters and things related by his father to Mr. Ramey at the time. This testimony was also excluded on objections of appellees, to which appellants excepted.

One of the grounds of objections urged by Marcus P. Haynes to the introduction in evidence of the above-mentioned affidavit of J. M. Haynes, the depositions of Tom Ramey and Lois Wells Orr, and the testimony of Marcus P. Haynes, was that such were privileged communications between Marcus P. Haynes and his attorney. This objection is not sustained by the authorities. Where, as in the circumstances here presented, facts are communicated to the attorney for the purpose of and are subsequently incorporated into the client's pleadings in a suit filed and prosecuted thereon, being for publication or transmission to others, are not in the nature of "confidential" disclosures, and do not come within the rule of privileged communications between attorney and client. San Antonio & A. P. Ry. Co. v. Booking (Tex.Civ.App.) 51 S.W. 537; Texas & P. Ry. Co. v. Spann (Tex.Civ. App.) 173 S.W. 600; League v. Galveston City Co. (Tex.Civ.App.) 192 S.W. 350; 44 Tex.Jur. 1069, § 98; 70 Cor.Jur. 428, § 571; 28 R.C.L. 563, § 152.

Appellees objected to the introduction of the affidavit of J. M. Haynes on the further grounds that it was hearsay and in disparagement of the title which he had conveyed to the land. The record shows

that appellants first offered the affidavit in evidence generally, and the court having sustained appellees' objection to its introduction, appellants subsequently and before concluding the introduction of their evidence again offered the affidavit in evidence, this time, "as against Marcus P. Haynes only." The same objections were made, sustained, and exceptions reserved. In their brief appellants predicate error upon the action of the trial court last mentioned.

■ We think the affidavit was admissible in evidence against Marcus P. Haynes. Briefly stated, the preceding facts in evidence under which the affidavit was offered show:

(1) That Marcus P. Haynes was present at the time the declarations contained in the affidavit were made, and expressed no dissent to the facts then stated by his father. On the contrary, it appears from his subsequent pleadings that he acquiesced in the facts stated by his father.

(2) That the affidavit was procured by and made for the use and benefit of Marcus P. Haynes in preparing his pleadings against the Sun Oil Company and that the facts stated in the affidavit were subsequently adopted by Marcus P. Haynes in bringing and settling that suit.

(3) That Marcus P. Haynes was not then asserting title through or under his father, but as an heir of his deceased mother, Mary Jane Haynes.

■ The general rule is, as contended by appellees: "That the declarations of a grantor, after his sale, can not be received to impeach his conveyance." But there are certain well-established exceptions to the rule: (1) "Where there has been a prima facie case of fraud established; as where the thing granted has a corpus, and the possession of the thing after the sale remains with the seller; (2) *where the declarations are made in the presence of the vendee and he acquiesces in the statements,* or asserts no rights where he ought to speak; (3) and where the evidence establishes a conspiracy between the vendor and the vendee." (Italics ours.) Moore v. Robinson (Tex.Civ.App.) 75 S.W. 890; Johnson v. Lagow (Tex.Civ.App.) 6 S.W. (2d) 383; 12 R.C.L. 676, § 180.

■ On the other hand, "it has always been the policy of the law in Texas to admit in evidence against a party any act or declaration of his against his interest, whenever or however performed or made." Thornell v. Missouri State Life Insurance Co. (Tex.Com.App.) 249 S.W. 203, 209; and authorities there cited; Wells v. Fairbank, 5 Tex. 582; Campbell v. McLaughlin (Tex.Com.App.) 280 S.W. 189, 191; 17 Tex.Jur. 556, § 231. In Campbell v. McLaughlin, supra, Judge Speer said: "Any act, whether by oral statement, written pleadings or conduct, whatsoever, by a person or by one authorized to speak or act for him, which fairly may be interpreted as an admission against interest upon a material matter of court inquiry, may be shown in evidence."

■ Marcus P. Haynes, through his attorney, having procured execution of the affidavit and made use of the facts by incorporating them in his pleadings as the basis of his suits filed and prosecuted against the Sun Oil Company and Bradley, thereby adopted them, as much so as if they had been his own declarations. They thus became admissible against him as "admissions by adoption." Knights of Modern Maccabees v. Gillis, 59 Tex.Civ. App. 109, 125 S.W. 338; Thornell v. Missouri State Life Insurance Co. (Tex.Com. App.) 249 S.W. 203, in which last case Judge Powell quotes with approval the rule as stated in 2 Wigmore on Evidence, § 1073, pt. 4: "The party's use of a document made by a third party will frequently amount to an approval of its statement as correct, and thus it may be received against him as an admission by adoption." In 22 Cor.Jur. 297 § 324, it is said: "A voluntary, and certain statement, oral or written, amounting to an admission of the existence of any relevant matter of fact is competent evidence against the party by whom it was made or to whom it is attributable, as a fact tending to show the truth of the statement and the existence of the facts to which it relates, and is not objectionable as hearsay."

■ We think the above authorities are sufficient to show that the circumstances under which the affidavit of J. M. Haynes was offered in evidence against Marcus P. Haynes clearly put it within an exception to the general rule rejecting statements of the grantor in disparagement of the title which he has conveyed, as well as relieved the statement from being hearsay. However, there is present in the record additional grounds upon which appellants further contend that the affidavit was admissible, and which appear to be

sound. The facts recited in the deed of March 10, 1931, from J. M. Haynes and Lucy Haynes to Marcus P. Haynes, and the facts recited in the pleadings of Marcus P. Haynes in the two suits above mentioned, were admitted in evidence. Marcus P. Haynes, though called as a witness, made no denial of these facts. The recitals, prima facie at least, established the facts recited, against Marcus P. Haynes. In 17 T.J. 675, § 287, "as a rule recitals in written instruments are admissible as evidence of the facts recited as between parties to the instrument and their privies. * * * Recitals in a deed which is admitted in evidence are also admissible. * * * Recitals when admissible are prima facie evidence of the truth of the facts recited, and sufficient proof of them, if not refuted by other evidence." See Kimbro v. Hamilton, 28 Tex. 560; Willis v. Smith, 72 Tex. 565, 573, 10 S.W. 683; Havard v. Smith (Tex.Civ.App.), 13 S.W. (2d) 743. In 17 T.J. 575, § 237, "Abandoned pleadings, or pleadings in another action, though in another court and between different parties, are admissible against the pleader when they contain material admissions against his interest. * * *" See Campbell v. McLaughlin (Tex.Com.App.) 280 S.W. 189; Greif & Bro. v. Seligman (Tex.Civ.App.) 82 S.W. 533; Houston, etc. Ry. v. De Walt, 96 Tex. 121, 70 S.W. 531, 97 Am.St.Rep. 877. The facts recited in the deed and pleadings mention show that Marcus knew of his mother's interest in the land at the time the deed was delivered to him by his father; that the deed was passed to him by virtue and in pursuance of such trust relation existing in his father as to his mother's interest; that Marcus was not asserting a title under his father, but as an heir of his deceased mother. In such circumstances the affidavit of J. M. Haynes was not in derogation, but in support of, the title passed to and claimed by Marcus.

■■■ Marcus is in no better position than a purchaser with knowledge of the trust. Such a purchaser "takes the property subject to the trust, and becomes in effect substituted for his vendor as trustee." 42 T.J. 729, § 113. See Hill v. Stampfli (Tex.Com.App.) 290 S.W. 522.

Appellees cite the case of Phillips v. Sherman (Tex.Civ.App.) 39 S.W. 187, 188. We do not conflict with that authority. In that case Mrs. Bettie Sherman sued the heirs of J. J. Higgins for one-half undivided interest in a tract of land. Plaintiff claimed that her father, George Roach, and grandfather, T. J. Roach, had each furnished one-half the purchase price of the land, in a conveyance by deed from Frank S. Box to T. J. Roach, and that T. J. Roach held one-half the land in trust for her father. Both T. J. and George Roach, as well as J. J. Higgins, were dead at the time of the suit. We quote the pertinent parts of the opinion of the court:

"The declarations of T. J. Roach, made prior to or contemporaneously with the execution and delivery of the conveyance to J. J. Higgins, would be admissible to show that one-half of the land was held by him in trust for George Roach, but it would not be permissible to introduce the declarations made by T. J. Roach after the deed was executed, unless they were made in the presence of J. J. Higgins. 1 Perry, Trusts, § 77. A trust binds every one in privity therewith. So, if the trustee sell the estate to a purchaser with full notice of the trust, the estate and person to whom it comes in such manner will be bound by the trust, because there is both privity of estate and of persons. But if the trustees sells the estate to a third person for a valuable consideration, without notice of the trust, he will not be bound by the trust. 1 Perry, Trusts, § 14; Blankenship v. Douglas, 26 Tex. 225 [82 Am.Dec. 608].

"We are of the opinion that the declarations of George Roach and Box were not admissible. The heirs of J. J. Higgins could not be bound by the declarations of Box, who had no privity of contract with J. J. Higgins, and the declarations of the cestui que trust are not competent to establish the trust. 1 Perry, Trusts, § 77. It follows that the letters from Box to T. J. Roach should not have been admitted in evidence.

"If J. J. Higgins had notice of, or was surrounded by circumstances that put him upon inquiry as to, the position of trust occupied by his vendor, the property would pass to his heirs burdened with such notice, and his declarations tending to establish his knowledge of the existence of the trust were properly admitted in evidence, as against his heirs. It is also clear that testimony showing notice to J. J. Higgins would not be binding on the vendees of either of the heirs, but it would be necessary to bring home to them notice of the existence of the trust, in

order to deprive them of the benefits that would accrue to them by reason of being purchasers for value."

We think the trial court erred in directing a verdict in favor of Marcus P. Haynes, also in refusing judgment in favor of appellants against J. M. Haynes on his disclaimer. The judgment entered by the trial court is a general one, that plaintiffs take nothing against defendants, naming them, by reason of their suit as to the 202 acres of land, describing it. Therefore, the judgment of the trial court will be reversed and judgment will here be rendered in favor of appellants against J. M. Haynes; and against appellants and in favor of defendant Lucy Haynes to the west one-half of the 202 acres, as described in her deed from Edwin Lacy; and in favor of the royalty holders, Lem L. Allen, E. V. Woolsey, Thomas Dix, and E. B. McKean to the respective interest shown by the record to be held by them; and as to Marcus P. Haynes the cause is remanded for trial. Cost is taxed against Marcus P. Haynes.